499 A.2d 606

**Lisa R. CASEY, a/k/a Lisa R. Morse, A Minor Child of Bridget C. Casey, Her Natural Mother and Guardian, and Bridget C. Casey, Appellants,**

v.

**James C. GEIGER and Borough of Camp Hill, and Andrew Janssen.**

Superior Court of Pennsylvania.

Argued June 5, 1984.

Filed Oct. 4, 1985.

Howard M. Newstadt, Harrisburg, for appellants.

Thomas J. Williams, Carlisle, for appellees.

Before McEWEN, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Appellants contend that the lower court erred in sustaining appellees' preliminary objections in the nature of a demurrer to counts IV and V of appellants' amended complaint and in dismissing the amended complaint as against appellees. We disagree and, accordingly, affirm the Order of the court below.

On September 10, 1981, appellants Bridget Casey and her daughter, Lisa, filed a complaint against defendant James Geiger alleging false imprisonment, assault and battery, and intentional infliction of emotional distress, and against appellees, Borough of Camp Hill and Andrew Janssen, Borough Manager, alleging negligence.[1] On September 23, appellees filed preliminary objections in the nature of a demurrer to counts IV and V, the negligence counts, of the complaint. Appellees claimed that appellants failed to state a cause of action against them in accordance with the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541 et seq. (formerly 53 P.S. § 5311.101 et seq.) [hereinafter cited as the "Act"][2] The court below sustained the objections on November 2 and filed in support thereof a Memorandum Opinion on November 4, basing its decision on *Chapman v.*

[1]. Although the docket sheet indicates that the complaint was filed on August 10, this is error because the complaint is stamped September 10.

[2]. Act of November 26, 1978, P.L. 1399, *as amended,* 53 P.S. §§ 5311.101–.803, *repealed* by the Act of October 5, 1980, P.L. 693, now codified in sections 8541–64 of the Judicial Code, 42 Pa.C.S.A. §§ 8541–64. "Because the incident which gave rise to the cause of action herein occurred prior to its repeal, the Political Subdivision Tort Claims Act is controlling for the purposes of this case." *Close v. Voorhees,* 67 Pa.Commw. 205, 208 n. 5, 446 A.2d 728, 730 n. 5 (1982).

*City of Philadelphia,* 290 Pa.Super 281, 434 A.2d 753 (1981). The court, however, granted appellants' leave to file an amended complaint, which they did on April 12, 1982. On April 16, appellees filed the same objections to the amended counts IV and V. The lower court sustained the objections, dismissed the amended complaint as against appellees, and filed an opinion in support thereof on June 18, again relying primarily upon *Chapman.* This appeal followed.

In considering preliminary objections in the nature of a demurrer, the following standard is applied:

> It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom.... Conclusions of law and unjustified inferences are not admitted by the pleading. Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained....

*Abarbanel v. Weber,* 340 Pa.Super. 473, 479, 490 A.2d 877, 880 (1985) (citations omitted).

In their amended complaint, the appellants allege the following: (1) On June 19, 1979, appellant Lisa Casey, then ten years old, participated in swimming lessons sponsored by appellee Borough at Seibert Memorial Park, a recreational park facility owned and operated by the Borough for use solely by the residents of the Borough; (2) appellant Bridget Casey, Lisa's mother, paid an annual fee to appellee Borough for which consideration her children were entitled to use of the recreational facilities in the Park; (3) at about 10:40 on the morning of June 19, 1979, appellant, Lisa Casey, after completing her swimming lesson, proceeded to walk through the Park; (4) at about 10:45 a.m. defendant Geiger engaged appellant Lisa Casey in conversation, then

forcibly picked up and carried her into the bushes and overgrown underbrush in the Park whereupon he proceeded to rape and assault her; (5) at the time of the above-described incidents, appellant Lisa Casey was an invitee of appellee Borough; (6) appellees owed appellant Lisa Casey, as an invitee, a duty of reasonable care for her protection and even a greater duty of care than that owed an adult invitee because appellant was a minor; (7) appellees failed to exercise reasonable care and were negligent (a) in failing to provide adequate protection in the form of police or security personnel to protect her as an invitee against the criminal acts of third persons, (b) by permitting underbrush in the Park to become overgrown thus facilitating such criminal acts, (c) by allowing a nonresident, defendant Geiger, to gain entrance into the Park and remain there without being questioned as to his purpose for being there, and (d) by reason of the fact that appellees knew or should have known that the type of criminal act committed against appellant was likely, as a rape of a young girl had occurred in the Park only months before the attack on appellant; and (8) by permitting her daughter to attend the swimming lessons, appellant justifiably relied upon appellees to reasonably provide for her daughter's safety. Accepting the above facts as true, we find that appellants have failed to state a claim upon which relief may be granted.

We begin our analysis by noting that 42 Pa.C.S.A. § 8541 provides:

§ 8541. **Governmental immunity generally**

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.[3]

The Political Subdivision Tort Claims Act was a legislative response to the proliferation of liability claims against governmental units following *Ayala v. Philadelphia Board of*

---

**3.** Local agencies are government units, such as appellee Borough of Camp Hill, other than the Commonwealth government. *See* 42 Pa.C.S.A. § 8501.

*Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), which abrogated the common law doctrine of governmental immunity. *See generally* Comment, *The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability,* 84 Dick L.Rev. 717 (1980). While the Act generally provides for immunity, 42 Pa.C.S.A. § 8542 sets forth several conditions which, if fulfilled, will impose liability on a local agency.[4] Specifically, section 8542 provides:

**§ 8542. Exceptions to governmental immunity**

(a) *Liability imposed.*—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

---

4. Liability of appellee Janssen is governed by 42 Pa.C.S.A. § 8545:

   An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

   Further, employees also have the benefit of the defenses enumerated in § 8546.

. . . .

(3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems:

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.[5]

■ In construing the above section, one must keep in mind that it is an *exception* to the general rule of governmental immunity that is stated in section 8541. Therefore, a proper application of the rules of statutory construction dictates a strict and narrow interpretation of the eight categories of liability enumerated in section 8542(b). 1 Pa.C.S.A. § 1924 (Purdon Supp.1984–85). *See Borenstein v. City of Philadelphia,* 595 F.Supp. 853 (Ed.Pa.1984) (waivers of immunity are to be narrowly construed). Moreover, a narrow reading of the eight categories of liability is also mandated upon consideration of the legislative intent to insultate political subdivisions from tort liability, as expressed in the preamble of the Act. 1 Pa.C.S.A. § 1921 (Purdon Supp.1984–85).

Appellants contend that section 8542(b)(3) strips from appellees the cloak of immunity afforded them under section 8541 since the acts of appellees fall within "[t]he care,

5. The eight acts which may impose liability on the local agency are: (1) motor vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property; (4) a dangerous condition of trees, traffic controls and street lighting; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) care, custody or control of animals. 42 Pa.C.S.A. § 8542(b).

custody, or control of real property" exception. We disagree and refer to the instructive case of *Vann v. Board of Education of the School District of Philadelphia*, 76 Pa. Commw. 604, 464 A.2d 684 (1983), wherein the distinguished Commonwealth Court Judge Joseph P. Doyle stated:

> We have held that Section 8542(b)(3) does not waive immunity as to any unfortunate incident solely because it occurs on government-owned premises. *Wimbish v. School District of Penn Hills*, 59 Pa. Commonwealth Ct. 620, 430 A.2d 710 (1981). We believe the Section must be read as a narrow exception to a general legislative grant of immunity and we construe it to impose liability only for negligence which makes government-owned property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may be reasonably foreseen to be used. Violent criminal acts such as occurred here are not a reasonably foreseeable use of school property such that the exception will be applied.

*Id.* at 606, 464 A.2d at 686 (footnotes omitted).

Further expounding on this rationale, the *Vann* Court noted:

> We point out in addition that while it is the clear intent of Section 8542 of the Judicial Code to waive governmental immunity and impose liability for negligence in the control and maintenance of public property, we do not read the statute to impose a standard of liability in cases involving this exception to immunity greater than that to which private landowners are held. While a school district may be held liable for negligence in maintenance and control of property when injury results to a public invitee, *see Bersani v. School District of Philadelphia*, 310 Pa. Superior Ct. 1, 456 A.2d 151 (1983), the School District here owed no *duty* to Javelle Vann or to the public at large to prevent the use of its property for criminal attacks such as occurred in this case. Surely, had the attack on Javelle Vann occurred on private property, *the private landowner would not be held liable for failure to secure his property from such use, or for failure to*

*illuminate the unlighted areas on his property.* The School District as landowner, therefore, cannot be held liable here.

*Id.* at 608 n. 5, 464 A.2d at 686 n. 5 (emphasis added).

The above language of the *Vann* decision has been strengthened by the recent case of *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). In *Feld,* our Supreme Court held that a private landlord is *not* liable to a tenant for the criminal acts of unknown third persons absent a pre-existing duty, such as where the landlord either gratuitously or for compensation assumes a duty, and then negligently performs it. In reaching this conclusion, the *Feld* Court stated:

> The threshold question is whether a landlord has any duty to protect acts of third persons, and if so, under what circumstances. Well settled law holds landlords to a duty to protect tenants from injury arising out of their negligent failure to maintain their premises in a safe condition. *See Smith v. M.P.W. Realty Co. Inc.,* 423 Pa. 536, 225 A.2d 227 (1967). *Lopez v. Gukenback,* 391 Pa. 359, 137 A.2d 771 (1958). That rule of law is addressed to their failure of reasonable care, a failure of care caused by their own negligence, a condition, the cause of which was either known or knowable by reasonable precaution. *The criminal acts of a third person belong to a different category and can bear no analogy to the unfixed radiator, unlighted steps, falling ceiling, or the other myriad possibilities of one's personal negligence. To render one liable for the deliberate criminal acts of unknown third persons can only be a judicial rule for given limited circumstances.*
>
> . . . .
>
> *The criminal can be expected anywhere, any time, and has been a risk of life for a long time. He can be expected in the village, monastery and the castle keep.*

*Id.,* 506 Pa. at 390–91, 485 A.2d at 745–46 (emphasis added).

Justice Zappala's Concurring Opinion in *Feld v. Merriam* adds:

As noted in the Opinion of the Court, the weakness of Appellees' argument is demonstrated by their failure to recognize a crucial distinction between the risks of injury from a condition of the property and from criminal acts of a third person. In failing to maintain the condition of the common areas of the leased premises, the landlord's conduct, has *created* the risk of injury to a tenant. It is the responsibility of the landlord to abate the risk which his conduct has created. Liability may then be imposed upon a landlord where injury results because of his conduct or failure to remove the risk of harm created by his conduct. The risk of injury from criminal acts arises not from the conduct of the landlord, but from the conduct of a third person.

*Id.*, 506 Pa. at 402, 485 A.2d at 751 (Zappala, J., Concurring) (footnote ommitted).

In *Cooper v. City of Pittsburgh*, 390 Pa. 534, 136 A.2d 463 (1957), our Supreme Court, in reversing a judgment against the city, noted that while a city must exercise reasonable care in maintaining its parks, playgrounds, etc., it is *not* an insurer of the safety of children playing on its public playgrounds. The *Cooper* Court stated that a municipality need only "supervise children to the same degree that a reasonably prudent parent would do under the circumstances—in this case supervising children over a 25 acre playground." *Id.*, 390 Pa. at 538, 136 A.2d at 464–65. We find the following rationale of *Cooper* to be particularly antithetical to the appellants' claim:

The effect of plaintiff's contention would be to require the city to have sufficient supervisors (a) to supervise sixty minutes of every hour of every day the use by children of swings, slides, sand boxes and other amusement facilities common to playgrounds, and (b) to organize and supervise hard and soft ball games and other sports, and (c) to prevent fighting and rowdyism, and (d) to carefully watch and safeguard all the children in the entire playground virtually every minute he, she or they are there. Such a standard advocated by this plaintiff,

cannot be adopted because it would impose so high and so unreasonable a degree of care as to make the city, in practical effect, an insurer of the safety of every child who enters the playground.

*Id.*, 390 Pa. at 539, 136 A.2d at 465. *See Close v. Voorhees,* 67 Pa.Commw. 205, 446 A.2d 728 (1982) (alleged negligence of school district for failing to prevent stabbing death of student by fellow student did not relate to care, custody and control of real property); *Robson v. Penn Hills School District,* 63 Pa.Commw. 250, 437 A.2d 1273 (1981) ("it would be a total distortion of the language of section [8242](b)(3) to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property"); *Wimbish v. School District of Penn Hills,* 50 Pa.Commw. 620, 430 A.2d 710 (1981) (same); *Munoz v. School District of Penn Hills,* 23 Pa.D. & C.3d 473 (1982) (same). *See also Styer v. City of Reading,* 360 Pa. 212, 61 A.2d 382 (1948) (Patterson, J., dissenting).

▪ Applying the above case law to the instant facts, we conclude that appellants' claim is barred under 42 Pa.C.S.A. § 8541 since none of the exceptions to governmental immunity apply.

▪ In addition, even if the activity at issue fell within the care, custody and control of real property exception, 42 Pa.C.S.A. § 8542(b)(3), appellants have failed to satisfy the preliminary hurdle of section 8542(a)(1) which requires them to establish that their cause of action against the municipality must meet the same standards as would be the case if a private party were being sued. *Vann, supra.* That being so, we note the basic elements of a cause of action founded upon negligence are:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on his part to conform to the standard required.

3. A reasonably close causal connection between the conduct and the resulting injury....

4. Actual loss or damage resulting to the interests of another.

Prosser, Law of Torts, § 30 at 143 (4th ed.1971).

*Macina v. McAdams,* 280 Pa.Super. 115, 120, 421 A.2d 432, 434 (1980). "[D]uty is a question of whether a defendant is under any obligation for the benefit of the particular plaintiffs, and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of apparent risk." Prosser, *Law of Torts,* § 53 at 970 (4th ed.1971). Our inquiry thus becomes whether the appellees had a duty to protect Lisa R. Casey from the intentional criminal acts of a third party. While a municipality is under a duty to exercise reasonable care under all the circumstances, we reiterate that it is not an insurer of the safety of children at public parks. *Cooper, supra. See also Zeman v. Borough of Canonsburg,* 423 Pa. 450, 223 A.2d 728 (1966). For instance, had Lisa R. Casey been injured while swimming at a public pool because the Borough provided no lifeguard at the pool, the Borough would be liable because it had a duty to exercise reasonable care. *DeSimone v. Philadelphia,* 380 Pa. 137, 110 A.2d 431 (1955). Under the present facts, however, appellants' claim falls short because no such duty exists.[6]

Like the lower court, we find the case of *Chapman v. City of Philadelphia,* 290 Pa.Super. 281, 434 A.2d 753 (1981) to be controlling here. In *Chapman,* this Court upheld the trial court's dismissal of a wife's lawsuit against the city alleging a negligent breach of duty to protect citizens after her husband died from injuries sustained

6. The gravamen of the appellant's complaint is an attack on the governmental discretion to allocate police and other security resources rather than the articulation of a specific duty owed to the injured party. This type of claim seems to be filed by victims of crime with increasing frequency today. As there is no indication that the courts of this Commonwealth are considering adopting a broader concept of duty in this area, most of this litigation is wasteful and counterproductive.

during an attack and robbery by three men on the platform of the city railroad station. The *Chapman* Court held that:

> The duty of the City of Philadelphia to provide police protection is a public one which may not be claimed by an individual unless a special relationship exists between the city and the individual. *Berlin v. Drexel University,* 10 Pa.D. & C.3d 319 (1979); 46 A.L.R.3d 1084. A special relationship is generally found to exist only in cases in which an individual is exposed to a special danger and the authorities have undertaken the responsibility to provide adequate protection for him. *Berlin v. Drexel, supra;* 46 A.L.R.3d 1084.

*Id.,* 290 Pa.Superior Ct. at 283, 434 A.2d at 754. *See Melendez by Melendez v. City of Philadelphia,* 320 Pa.Super. 59, 466 A.2d 1060 (1983) (city not liable for failing to protect minor injured in racially troubled neighborhood; no special relationship existed); *Morris v. Musser,* 84 Pa. Commw. 170, 478 A.2d 937 (1984) (plaintiffs' complaint alleging inadequate police protection failed to set forth facts necessary to establish a special relationship with the police).

The *Chapman* Court went on to state:

> In her memorandum of law filed with her answer to the city's preliminary objections, plaintiff indicated that her action against the City of Philadelphia was predicated on the fact that the city was aware that the Wayne Junction Railroad Station was a particularly dangerous area but that it did nothing about it. It is clear that such proof would not be sufficient to state a cause of action because it does not establish that a special relationship existed between the city and the plaintiff's decedent. In their appellate brief, appellants urge us to find that a special relationship exists between the city and any individual who is injured in a particularly dangerous area. We decline to do so.

Appellants urge this court to proclaim a sweeping duty of protection in the law of tort, far beyond anything any

court or indeed our own State legislatures has been willing to recognize.

*Id.* 290 Pa.Super. at 285, 434 A.2d at 755. We find the above language persuasive in its application to the facts before us.[7]

Appellants rely on several cases where municipalities were found liable for injuries to children in public parks. Our careful review of these cases discloses that none of them dealt with injuries caused by the criminal acts of third persons. *See Cooper v. Pittsburgh, supra, DeSimone v. Philadelphia, supra; Styer v. City of Reading, supra; Hill v. Allentown Housing Authority,* 373 Pa. 92, 95 A.2d 519 (1953).[8]

Courts have recognized that where there is a special relationship between the victim and the police, there may follow some duty to provide police protection. *See Miller v. United States,* 530 F.Supp. 611 (E.D.Pa.1982) (police agreed to protect an informant). A leading case on the special relationship is *DeLong v. Erie County,* 60 N.Y.2d 296, 457 N.E.2d 717, 469 N.Y.S.2d 611 (1983), in which the New York Court of Appeals held that the actions of a city and county in holding out a 911 telephone number to be called by someone in need of emergency assistance constitutes a duty. Emphasizing the plaintiff's reliance on the actions of the city and county in holding out the number as well as the plaintiff's further reliance on the assurance that help was

**7.** Appellants argue that Lisa R. Casey was an invitee on public property and therefore the Borough owed her a special duty. However, in *Chapman,* the plaintiff was also an invitee at the public train station; nevertheless, this Court found no special duty on the part of the municipality.

**8.** Other jurisdictions have refused to find liability under similar circumstances. *See, e.g., Prickett v. Hillsboro,* 323 Ill.App. 235, 55 N.E.2d 306 (1944) (no liability on behalf of municipality for death of young boy shot by a third party while swimming in a lake on municipal property despite fact that police knew of dangerous propensities of third party); *Trujillo v. City of Albuquerque,* 93 N.M. 564, 603 P.2d 303 (1979) (municipality not liable for failure to provide police protection in shotgun killing of decedent in public park where there was no direct relationship or contact between victim and police such as to create a special duty). *See generally,* Annot., 46 A.L.R.3d 1084 (1972).

on its way, the *DeLong* Court found that the police created a special relationship with particular members of the public by establishing the 911 emergency number. Once this relationship was created between the caller and the police, a special duty arose which made the government accountable for negligence in the performance of that duty. *DeLong v. Erie County, supra. See* Note, 22 Duq.L.Rev. 299 (1983). *See also Schuster v. City of New York*, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958) (city deemed to have undertaken a special duty to protect a police informant whose life had been threatened); *Yearwood v. Town of Brighton*, 101 A.D.2d 498, 475 N.Y.S.2d 958 (1984) (municipality cannot be held liable for negligence in the investigation of a domestic quarrel unless a special relationship exists between the municipality and the injured party); *Ammirati v. New York City Transit Authority*, 117 Misc.2d 213, 457 N.Y.S.2d 738 (Sup.Ct. Kings Co.1983) (claim against Transit Authority alleging a failure to prevent or protect a passenger from injury by a thrown rock was dismissed; no special duty existed).

■ Applying the rationale of the above cases to the present matter, it becomes unequivocably clear that no special relationship existed between Lisa R. Casey and the Borough of Camp Hill. In the instant case, the Borough should not be held to a higher standard of care since it did not undertake any obligation to provide a greater degree of protection.

Appellants nevertheless contend that because a prior rape had occurred some months before the instant attack,[9] the criminal act was not a superseding cause of appellees' negligence, but rather its proximate result, and they cite the Restatement (Second) of Torts § 448 [10] in support there-

9. Appellees dispute appellants' characterization of the previous rape as occurring "only months before." (Appellants' Amended Complaint at 11). Appellees' aver that the "alleged assault was reported June 19, 1976." (Appellees' Answer to Appellants' Interrogatories, Interrogatory 15). As we have noted, however, in ruling upon a demurrer, we must accept as true appellants' allegations of fact.

10. The Restatement (Second) of Torts § 448 provides:

of. However, we find appellants' reliance on section 448 to be misplaced since that section is only relevant to the question of causation in a negligence action and does not determine whether appellees owed a duty of care to the appellant, Lisa R. Casey.

Finally, we wish to point out that our decision, like this Court's decision in *Chapman,* is supported by sound policy considerations. If the standard of supervision and care adopted by the dissent were implemented, it is questionable how long any municipality could maintain its parks, playgrounds and swimming pools. Due to the cost of increased insurance premiums and added police protection, municipalities will lack the necessary funds to provide recreational services. The end result is that the welfare of the public at large will suffer. We, therefore, decline to stretch the concept of duty beyond its limits to reach such an unreasonable and illogical result. While we sympathize with the appellant, Lisa R. Casey, who no doubt was subjected to a horrible experience, we must refrain from judicial innovation which would allocate the limited resources of municipalities in a manner contrary to the public interest.

Accordingly, the Order sustaining appellees' preliminary objections in the nature of a demurrer and dismissing appellants' amended complaint is affirmed.[11]

Order affirmed.

HOFFMAN, J., files a dissenting opinion.

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

11. There is no issue of Commonwealth Court jurisdiction in this case, as the law applicable is that under 42 Pa.C.S.A. § 762(a)(7), "Immunity waiver matters.—Matters in which immunity has been waived pursuant to Subchapter C of Chapter 85 (relating to actions against local parties)", which was amended 1982, Dec. 20, P.L. 1409, No. 326

HOFFMAN, Judge, dissenting:

I dissent. The majority's restrictive interpretation of the "special relationship" doctrine, *see Chapman v. City of Philadelphia*, 290 Pa. Superior Ct. 281, 434 A.2d 753 (1981), and the Political Subdivision Tort Claims Act, 53 P.S. §§ 5311.101–.803 (Purdon Supp.1980–1981),[1] gives new life to the discredited maxim that "the King can do no wrong." *See generally* W. Prosser & W. Keeton, *The Law of Torts* § 131 at 1032–33, 1043–46 (5th ed. 1984).

Appellants contend that the lower court erred in sustaining appellees' preliminary objections in the nature of demurrers to counts IV and V of appellants' amended complaint and in dismissing the amended complaint as against appellees. I agree and would, accordingly, reverse the order of the court below and remand this case for further proceedings.

On September 10, 1981, appellants Bridget Casey and her daughter, Lisa, filed a complaint against defendant James Geiger alleging false imprisonment, assault and battery, and intentional infliction of emotional distress, and against appellees, Borough of Camp Hill and Andrew Janssen, Borough Manager, alleging negligence.[2] On September 23, appellees filed preliminary objections in the nature of de-

art. II, § 201, effective in 60 days which amendment, in (a)(7) substituted "conducted" for "in which immunity has been waived." The incident here occurred before the effective date of the amendment, which is not retroactive, and since immunity was not waived, appeal to Commonwealth Court did not lie.

1. Act of November 26, 1978, P.L. 1399, No. 330, §§ 101–803, *repealed by* Act of October 5, 1980, P.L. 693, No. 142, § 333, *replaced by id.,* § 221(1) (codified at 42 Pa.C.S.A. §§ 8541–64 ("actions against local parties"); effective Dec. 4, 1980). Technically, "[b]ecause the incident which gave rise to the cause of action herein occurred prior to its repeal, the Political Subdivision Tort Claims Act is controlling for the purposes of this case," *Close v. Voorhees,* 67 Pa.Commonwealth Ct. 205, 208 n. 5, 446 A.2d 728, 730 n. 5 (1982); *see also Wimbish v. School District,* 59 Pa.Commonwealth Ct. 620, 622 n. 2, 430 A.2d 710, 711 n. 2 (1981). However, because the two Acts are nearly identical, I will, as does the majority, cite to the applicable sections of the Judicial Code.

2. Although the docket sheet indicates that the complaint was filed on August 10, this is error because the complaint is stamped September 10.

murrers to counts IV and V, the negligence counts, of the complaint. Appellees claimed that appellants failed to state a cause of action against them in accordance with the Political Subdivision Tort Claims Act, *supra.* The court below sustained the objections on November 2 and filed in support thereof a memorandum opinion of November 4, basing its decision on *Chapman v. City of Philadelphia, supra.* The court, however, granted appellants leave to file an amended complaint, which they did on April 12, 1982. On April 16, appellees filed the same objections to the amended counts IV and V. The lower court sustained the objections, dismissed the amended complaint as against appellees, and filed an opinion in support thereof on June 18, again relying primarily upon *Chapman.* This appeal followed.

In ruling upon a demurrer, this Court looks to these well-established principles:

> A demurrer admits all relevant facts pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law. *Gekas v. Shapp,* 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Buchanan v. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 139, 320 A.2d 117, 120 (1974); *Borden v. Baldwin,* 444 Pa. 577, 582, 281 A.2d 892, 895 (1971); *Tanenbaum v. Sears, Roebuck and Co.,* 265 Pa.Super. 78, 81, 401 A.2d 809, 810 (1979). A demurrer may not be sustained unless the complaint evidences on its face that the claim cannot be sustained because the law will not permit recovery. *Gekas v. Shapp, supra* 469 Pa. at 5, 364 A.2d at 693; *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 111, 299 A.2d 585, 587 (1973); *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 503–504, 267 A.2d 867, 868 (1970); *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 291, 259 A.2d 443, 449 (1969); *Pike County Hotels Corp. v. Kiefer,* 262 Pa.Super. 126, 133–134, 396 A.2d 677, 681 (1978). In ruling on a demurrer, a court may not consider factual matters not disclosed in the record. *International Union of Operating Engineers v.*

*Linesville Construction Co.*, 457 Pa. 220, 223, 322 A.2d 353, 356 (1974); *Muia v. Fazzini*, 416 Pa. 377, 205 A.2d 856 (1965). .... If there is any doubt, the doubt should be resolved in favor of overruling the demurrer; .... *Gekas v. Shapp, supra* 469 Pa. at [6], 364 A.2d at 693; *Clevenstein v. Rizzuto*, 439 Pa. 397, 401, 266 A.2d 623, 625 (1970); *Adams v. Speckman*, 385 Pa. 308, 309, 122 A.2d 685, 686 (1956); *Todd v. Skelly*, 384 Pa. 423, 428, 120 A.2d 906, 909 (1956). Judgment should not be entered against a plaintiff if the pleadings indicate that he could state a better case by amendment. *Tide Water Associated Oil Co. v. Kay*, 168 Pa.Super. 263, 77 A.2d 754 (1951); Goodrich-Amram 2d § 1017(b):11.

*Chorba v. Davlisa Enterprises, Inc.*, 303 Pa. Superior Ct. 497, 500–01, 450 A.2d 36, 37–38 (1982). "[A] preliminary objection in the nature of a demurrer should not be granted if the allegations of the complaint state a cause of action under *any theory of law....*" *Packler v. State Employes' Retirement Board*, 470 Pa. 368, 371, 368 A.2d 673, 675 (1977) (emphasis in original).

In their amended complaint, appellants allege the following: (1) On June 19, 1979, appellant Lisa Casey, then ten years old, participated in swimming lessons sponsored by appellee Borough at Seibert Memorial Park, a recreational park facility owned and operated by the Borough for use solely by the residents of the Borough; (2) appellant Bridget Casey, Lisa's mother, paid an annual fee to appellee Borough for which consideration her children were entitled to use of the recreational facilities in the Park; (3) at about 10:40 on the morning of the 19th, appellant Lisa Casey, after completing her swimming lesson, proceeded to walk through the Park; (4) at about 10:45 a.m. defendant Geiger engaged appellant Lisa Casey in conversation, then forcibly picked up and carried her into the bushes and overgrown underbrush in the Park whereupon he proceeded to rape and assault her; (5) at the time of the above-described incidents, appellant Lisa Casey was an invitee of appellee Borough; (6) appellees owed appellant Lisa Casey as an

invitee a duty of reasonable care for her protection and even a greater duty of care than that owed an adult invitee because appellant was a minor; (7) appellees failed to exercise reasonable care and were negligent (a) in failing to provide adequate protection in the form of police or security personnel to protect her as an invitee against the criminal acts of third persons, (b) by permitting underbrush in the Park to become overgrown thus facilitating such criminal acts, (c) by allowing a nonresident, defendant Geiger, to gain entrance into the Park and remain there without being questioned as to his purpose for being there, and (d) by reason of the fact that appellees knew or should have known that the type of criminal act committed against appellant was likely, as a rape of a young girl had occurred in the Park only months before the attack on appellant; and (8) by permitting her daughter to attend the swimming lessons, appellant justifiably relied upon appellees to reasonably provide for her daughter's safety. Accepting the above facts as true, I cannot say that appellants have failed to state a claim upon which relief may be granted.

Generally, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541.[3] However, the general rule is not ironclad; § 8542 sets forth several conditions which, if fulfilled, will impose liability on a local agency.[4] The first condition, requires that "[t]he damages would be recoverable under common law or a

---

**3.** Local agencies are government units, such as appellee Borough, other than the Commonwealth government. *See* 42 Pa.C.S.A. § 8501.

**4.** Liability of appellee Janssen is governed by 42 Pa.C.S.A. § 8545:

An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

Employees also have the benefit of the defenses enumerated in § 8546. *See also* § 8547 (legal assistance provided by local agency); § 8548 (indemnity by local agency); § 8549 (limitation on damages recoverable against employee); § 8550 (employee's willful misconduct).

statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); ...."
*Id.* § 8542(a)(1). Thus, put another way, if appellees were private, as opposed to governmental, parties, could a cause of action be stated against them?

Here, under the facts alleged, I believe that appellants could state a cause of action under § 344 of the Restatement (Second) of Torts (1965) [hereinafter Restatement], which provides that:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Section 344 is followed in Pennsylvania. *Moran v. Valley Forge Drive-In Theatre, Inc.*, 431 Pa. 432, 246 A.2d 875 (1968); *Murphy v. Penn Fruit Co.*, 274 Pa. Superior Ct. 427, 418 A.2d 480 (1980); *Carswell v. Southeastern Pennsylvania Transportation Authority*, 259 Pa. Superior Ct. 167, 393 A.2d 770 (1978). It

> requires that [owners of land who hold their property open to the public for business purposes] take reasonable precaution against that which might be reasonably anticipated. The reason is clear; places to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury

that follows the absence of reasonable precaution against that common expectation.

*Feld v. Merriam*, 506 Pa. 383, 391, 485 A.2d 742, 745 (1984). Because appellant Bridget Casey alleged that she paid a recreation fee to appellee Borough for use of the recreational facilities at the Park, I believe that her daughter would therefore be considered a business invitee of the Borough.[5]

"Invitees" are defined as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Restatement § 332. Appellant Lisa Casey was not "[a]ny member of the public who enter[ed]" the Park, *see id.* comment d., but one whose mother paid a fee to use the recreational facilities there and who was at the Park for a specific activity, that is, swimming lessons, organized and supervised by Borough officials. This case, then, is similar to the public transportation cases, where it was stated that subway patrons are not "ordinary member[s] of the public walking down the streets of Philadelphia, but [are] business

---

**5.** The majority notes "that while a city must exercise reasonable care in maintaining its parks, playgrounds, etc., it is *not* an insurer of the safety of children playing on its public playgrounds." Majority Opinion at ——. This is a correct statement of the law. *See Zeman v. Canonsburg Borough*, 423 Pa. 450, 223 A.2d 728 (1966) (plaintiff suffered injuries to his forehead after he was pushed into a swimming pool); *Cooper v. Pittsburgh*, 390 Pa. 534, 136 A.2d 463 (1957) (plaintiff's right arm between the elbow and shoulder had to be amputated after a fall from a swing); *DeSimone v. Philadelphia*, 380 Pa. 137, 110 A.2d 431 (1955) (plaintiffs' decedent drowned in swimming pool); *Druding v. Philadelphia*, 374 Pa. 202, 97 A.2d 365 (1953) (plaintiff broke his neck on the bottom of swimming pool). Those cases are inapplicable to the instant case, however, because the plaintiffs' injuries there were related to the activity they engaged in (*e.g.*, swimming), and therefore § 344 liability was not in issue.

invitee[s] of both SEPTA and the City." *Hamm v. SEPTA,* 22 Pa.D. & C.3d 195, 203 (Ct.C.P.Phila.County 1982), *citing Fedullo v. SEPTA,* 3 Phila. 227, 231 (Ct.C.P.1979); *see also Shick v. SEPTA,* 1 Phila Interlocutory Civ. Opinions [PICO] 299 (Ct.C.P.Phila.County 1977). In this SEPTA triology, SEPTA and the City of Philadelphia were alleged to jointly operate the subway system, and therefore the courts held that, as business invitees of the City, the plaintiffs were owed the duty of care set forth in § 344 of the Restatement. Thus, appellant Lisa Casey entered Borough land for a purpose connected with the "business," the provision of swimming lessons, of the possessor of the land. And while the pecuniary benefit to the Borough may be negligible or even nothing at all, the community benefits in providing activities for its children with the goals of keeping them from less desirable pursuits as well as making them more productive, well-rounded members of the community. "The benefit to the possessor may be indirect and in the future." Restatement § 332 comment f. Thus, I have little difficulty in concluding here that appellant Lisa Casey was a business invitee of the Borough and therefore could have stated a cause of action against appellees had they been private, as opposed to governmental, parties, thus fulfilling the § 8542(a)(1) condition.

Appellees contend, and the lower court held, however, that *Chapman v. City of Philadelphia, supra,* compels a contrary result. In *Chapman,* this Court held that the duty of the City "to provide police protection is a public one which may not be claimed by an individual *unless a special relationship exists between the city and the individual.*" *Id.* 290 Pa.Super. at 283, 434 A.2d at 754 (emphasis added), *citing Berlin v. Drexel University,* 10 Pa.D. & C.3d 319 (Ct.C.P.Phila.County 1979). This rule is hardly a new one. "[W]ielding the executive power for the preservation of the public peace ... is a public duty, for neglect of which [the consevator of the peace] is amenable to the public, and punishable by indictment only." *South v. Maryland,* 59 U.S. (18 How.) 396, 403, 15 L.Ed. 433 (1855). In *South* the

plaintiff "allege[d] no special individual right, privilege, or franchise ... from the enjoyment of which he has been restrained or hindered...." *Id. See generally* Annot., 46 A.L.R.3d 1084 (1972).

Instead of focusing on the "special relationship" exception, appellants contend, on the other hand, that, because a prior rape had occurred some months before the instant attack,[6] defendant Geiger's criminal act was not a superseding cause of appellees' negligence, but more of a proximate result, and they cite § 448 of the Restatement[7] in support thereof. Appellants' reliance on § 448 is misplaced, however, because that section is only relevant to the question of causation in a negligence action and does not determine whether appellees owed a duty of care to appellant Lisa Casey. The *Chapman* court disposed of a similar contention:

> In her memorandum of law filed with her answer to the city's preliminary objections, plaintiff indicated that her action against the City of Philadelphia was predicated on the fact that the city was aware that the Wayne Junction Railroad Station was a particularly dangerous area but that it did nothing about it. *It is clear that such proof would not be sufficient to state a cause of action because it does not establish that a special relationship existed between the city and the plaintiff's decedent.* In their appellate brief, appellants urge us to find that a

**6.** Appellees dispute appellants' characterization of the previous rape as occurring "only months before." (Appellants' Amended Complaint at 11). Appellees aver that the "alleged assault was reported June 29, 1976." (Appellees' Answer to Appellants' Interrogatories, Interrogatory 15). As we have noted, however, in ruling upon a demurrer, we must accept as true appellants' allegations of fact.

**7.** Section 448 of the Restatement is as follows:
The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

special relationship exists between the city and any individual who is injured in a particularly dangerous area. We decline to do so.

*Chapman v. City of Philadelphia, supra* 290 Pa.Super. at 285, 434 A.2d at 755 (emphasis added); *see also* Lower Court Opinion at 5–6. Nevertheless, I do not believe that *Chapman* deprives appellants of their cause of action for the following reasons.

First, appellants not only alleged inadequate police protection, but also that the overgrown underbrush facilitated the attack, that a nonresident was permitted to gain entrance to and remain in the Park, and that appellees knew or should have known that an attack such as the one which took place was likely to reoccur. I note that any of these additional allegations could support a jury's finding that, contrary to the § 344 requirement, appellants failed "to exercise reasonable care to (a) discover that such [intentionally harmful acts of third persons] are being done or are likely to be done, or (2) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Next, even if appellants had alleged that appellees breached their duty of care *solely* by failure to provide adequate police protection or supervision, I would hold that appellant Lisa Casey's status as a business invitee created the special relationship between her and appellees. "A special relationship is generally found to exist only in cases in which an individual is exposed to a special danger and the authorities have undertaken the responsibility to provide adequate protection for him." *Chapman v. City of Philadelphia, supra,* 290 Pa.Superior Ct. at 283, 434 A.2d at 754, *citing Berlin v. Drexel University, supra. See also Melendez v. City of Philadelphia,* 320 Pa. Superior Ct. 59, 64–66, 466 A.2d 1060, 1063–64 (1983); *Morris v. Musser,* 84 Pa. Commonwealth Ct. 170, 173–75, 478 A.2d 937, 939–40 (1984). The *Berlin* court cited three cases which found such a special relationship: *Swanner v. United States,* 309 F.Supp. 1183 (M.D.Ala.1970) (undercover agent held to be a

"special employee" to whom the government owed a duty of protection); *Gardner v. Village of Chicago Ridge*, 711 Ill.App.2d 373, 219 N.E.2d 147 (1966) (prosecution witness); *Schuster v. New York*, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958) (police informant). "Besides the courts deciding *Schuster*, *Swanner* and *Gardner*, a growing number of courts have recognized that a municipality owes a duty to protect an informant with whom it has a special relationship." *Miller v. United States*, 561 F.Supp. 1129, 1136 (E.D.Pa.1983) (police informant, but not his girl friend, owed special duty).

I believe that the *Melendez*, *Chapman*, *Morris*, and *Berlin* cases are distinguishable and the special relationship test enunciated therein too narrow in light of the emerging caselaw.[8] None of the plaintiffs in those cases alleged that they were business invitees of the defendant municipality, the City of Philadelphia. The plaintiff in *Melendez* was shot in the left eye by his neighbor during a racial confrontation, the decedent in *Chapman* was attacked and raped at a railroad station, the plaintiffs in *Morris* were attacked at their gasoline station, and the plaintiff in *Berlin* was shot in the left thigh while walking from his fraternity house at Drexel University. *See also Adams v. City of Harrisburg*, 27 D. & C.3d 288 (Ct.C.P. Dauphin County 1982), *aff'd*, 78 Pa. Commonwealth Ct. 387, 467 A.2d 657 (1983) (no special relationship where plaintiff alleged failure of the police to investigate information that an object had been thrown against the door of a house across the street). Moreover, several lower court decisions in this Commonwealth have held that, *where the municipality undertakes to render services to another*, the requisite special relationship is created. *See Hamm v. SEPTA, supra; Fedullo v. SEPTA, supra; Shick v. SEPTA, supra.*[9]

---

8. It has been said that, "[i]n the area of tort liability, the Pennsylvania Supreme Court has been a forerunner." *See Miller v. United States, supra* at 1137 n. 12, *citing* Levy, E.S., Legal Intelligencer, October 2, 1982.

9. In *Duffy v. City of Philadelphia*, 580 F.Supp. 164 (E.D.Pa.1983), the court held that the plaintiff's status as a business invitee at Veterans

Other jurisdictions have begun to expand the scope of the "special relationship" exception. *See Lopez v. Southern California Rapid Transit District*, 153 Cal.App.3d 1135, —— P.2d ——, 200 Cal.Rptr. 779 (1984) (carrier/passenger; plaintiffs assaulted by fellow bus passengers); *Comastro v. Village of Rosemont*, 122 Ill.App.3d 405, 78 Ill.Dec. 32, 461 N.E.2d 616 (1984) (business owner/business invitee; plaintiff assaulted after a rock concert in Village arena); *Eisman v. Port Authority Trans Hudson Corp.*, 96 Misc.2d 678, 409 N.Y.S.2d 578 (Sup.Ct.1978) (common carrier/passenger; plaintiff assaulted and raped at publicly operated commuter railroad station). I realize, of course, that these cases may be distinguished based on their respective jurisdictions' peculiar governmental immunity statutes, duty of care statutes, and caselaw. I believe, however, that the underlying rationale for finding special relationships in those cases is applicable to the instant case.[10]

In *Lopez*, for example, the court noted that the duty to protect in that case was not owed to the citizenry as a whole but rather "to a specific group: its passengers. These passengers have accepted [the carrier's] offer of transportation and have placed themselves in [its] care and custody." *Lopez v. Southern California Rapid Transit District, supra* 153 Cal.App.3d at 1143, —— P.2d at ——, 200 Cal.Rptr. at 783. Similarly, here the duty to protect is limited to

Stadium, property owned and controlled by the City, did not create a special relationship. However, the *Duffy* decision was based on the special relationship test stated in *Chapman* and *Berlin;* no mention was made of the SEPTA cases. Furthermore, "the City had leased the Stadium to the Philadelphia Eagles [football club] and thus, can be said to have relinquished its exclusive duty of care, custody or control over the property as evidenced by the fact that additional security for the game was provided by private companies." *Id.* at 167 n. 2. And, in any event, we are not bound by the *Duffy* court's interpretation of Pennsylvania law.

**10.** *See also Sorichetti v. City of New York*, 65 N.Y.2d 461, 469, 482 N.E.2d 70, 75, 492 N.Y.S.2d 591, 596 (1985): "A key element ... in those [New York] cases that have found a special duty of reasonable care in the performance of other governmental functions [citations omitted] is some direct contact between the agents of the municipality and the injured party." Here, such direct contact is amply demonstrated by the facts alleged in appellants' complaint.

appellees' business invitees, *e.g.*, those participating in the swimming lessons. As the *Lopez* court stated,

> once a government decides to run a bus line it is required to make the same business judgments that a private bus company must make. The government bus line is also subject to the same operational expenses as the privately owned bus line including the cost of providing security for the passengers.

*Id.* at 1149, —— P.2d at ——, 200 Cal.Rptr. at 787 (footnote omitted). Likewise, I do not believe that a government-operated swimming pool should be run by a different set of rules than a private one. By accepting the Borough's offer of swimming lessons for her daughter, appellant Bridget Casey could expect that her daughter Lisa would be in the Borough's "care and custody." Additionally, the *Eisman* court, calling this "a rapidly developing area of the law," *Eisman v. Port Authority Trans Hudson Corp., supra* 96 Misc.2d at 682, 409 N.Y.S.2d at 581; *see also Melendez v. City of Philadelphia, supra* 320 Pa.Superior Ct. at 64, 466 A.2d at 1063; was "hesitant" to dismiss the plaintiff's complaint in that case because "[a] 'special relationship' between a governmental authority and a plaintiff may also arise when the authority, *in performing proprietary functions*, performs the role of a common carrier." *Id.* 96 Misc.2d at 681, 409 N.Y.S.2d at 580 (emphasis added). Here, I would also hesitate to dismiss appellants' complaint without affording them the opportunity of a full hearing on their claims.[11]

**11.** Appellees cite *Trujillo v. City of Albuquerque,* 93 N.M. 564, 603 P.2d 303 (1979), and *Prickett v. City of Hillsboro,* 323 Ill.App. 235, 55 N.E.2d 306 (1944), as examples of jurisdictions which have "refused to find liability under these circumstances." (Appellees' Brief at 8). Both are distinguishable, however, in that neither involved an allegation of a business owner/business invitee relationship. In *Trujillo,* the decedent went to a city park *after* a rock concert was held there. In *Prickett,* the court held that, even though a fee was charged for the use of a municipal swimming pool, its operation was a governmental function, not a proprietary one, thus bringing the City within that state's immunity rule. This Commonwealth no longer adheres to the governmental/proprietary functions distinction. Indeed, under § 8542(a)(1), we must determine if there would be a cause of action

Appellees, and the majority, also assert that, if a duty to protect is imposed in the instant case, municipalities would become insurers of individuals' safety at recreational facilities with the inevitable consequence that these would no longer be opened to the public. Our Supreme Court was previously unpersuaded by this argument on empirical, philosophical, and fairness grounds when it abolished the defense of governmental immunity. *See Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 596–97, 305 A.2d 877, 883 (1973) (ROBERTS, J.). Thus, I cannot agree that the "welfare of the public at large will suffer" where the Political Subdivision Tort Claims Act waives that immunity only in certain specified circumstances. Indeed, another court has correctly suggested that such an argument is a "red herring." *Lopez v. Southern California Rapid Transit District, supra* 153 Cal.App.3d at 1145, —— P.2d at ——, 200 Cal.Rptr. at 784. I agree. Appellees need not "expend so much to patrol its recreational areas as to make the cost of maintaining these areas prohibitive," Lower Court Opinion at 6, but need only "exercise *reasonable care* to (a) discover that [intentionally harmful acts of third persons] are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it." Restatement § 344 (emphasis added). The term "reasonable care" could encompass any variety of measures designed to prevent the type of harm which occurred in the instant case. I would not hold that appellees have a "round-the-clock" duty to supervise its business invitees or police its business premises. And, having found that appellees owe appellant Lisa Casey a duty of care, I would point out that appellants must still satisfy the other elements of their cause of action: breach of the duty, causation, and damages.[12] *See general-*

against a local agency and its employees if they did not have the defense of governmental immunity.

12. In this regard, I note that there is a limitation on damages recoverable from a local agency or its employees. *See* 42 Pa.C.S.A. §§ 8549, 8553. Additionally, § 8564 sets forth the means by which local agencies can insure against any resulting liability.

*ly* W. Prosser & W. Keeton, *supra*, § 30. Furthermore, even if damage judgments against local agencies are ultimately increased, expanded liability for breach of the § 344 duty can actually have some beneficial results. Police efficiency (and hence improved crime prevention) may be increased through cost internalization of what essentially amounts to a cost of doing business. Losses suffered, like those which appellants allege here, could be more equitably spread among those business invitees who receive the benefits, but not the costs, of the services provided by local agencies. In any event, it would be unfair to allow victims to remain uncompensated while negligent local agencies and their employees are shielded from liability. *See* Note, *Police Liability for Negligent Failure to Prevent Crime,* 94 Harv.L.Rev. 821, 832–35 (1981).

Finally, the majority today "decline[s] to stretch the concept of duty beyond its limits to reach such an unreasonable and illogical result." As our Supreme Court has stated, however: "Every cause of action in tort … was once a novel claim, and the absence of Pennsylvania authority for appellants' proposition is not an end to the issue.…" *Papieves v. Kelly,* 437 Pa. 373, 376–77, 263 A.2d 118, 120 (1970) (order sustaining preliminary objections in the nature of a demurrer and dismissing plaintiffs' complaint reversed; cause of action stated for serious mental or emotional distress directly caused by the intentional and wanton acts of mishandling a decedent's body).

Having found that appellees owe appellant Lisa Casey a duty of care, the Political Subdivision Tort Claims Act next requires that "[t]he injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in [42 Pa.C.S.A. § 8542(b) ]." 42 Pa.C.S.A. § 8542(a)(2). I agree with the majority that the relevant category here is the "real property" exception; however, I do not believe that appellees' acts fail to come within the

scope of the exception.[13]   Read literally, the exception includes those "acts by a local agency or any of its employees" constituting "[t]he care, custody or control of real property in the possession of the local agency" which "may result in the imposition of liability on a local agency." *Id.* § 8542(b)(3).

Under this literal interpretation of the exception, I have no difficulty in concluding that appellees' acts, or rather omissions to act, are contemplated within the phrase "the care, custody or control of real property." "Care" of the Seibert Memorial Park would certainly include appellees' alleged failure to prevent the Park's underbrush from becoming overgrown, thus possibly facilitating criminal acts such as the one which took place here.   Indeed, if "care" of a public park does not include such acts as maintenance, what does it include?   And appellees' alleged failures, (1) to prevent a nonresident, in effect, one *not* a business invitee, to gain entrance to the Park and (2) to provide police protection or supervision when appellees knew or should have known that another criminal attack was likely to occur, call into question their "control" of the Park.   I believe the interpretation of these words is simply a matter of common sense.   *See* 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").   For example, in *Hamm v. SEPTA,*

**13.** The majority states that "[a]ppellants contend that section 8542(b)(3) strips from appellees the cloak of immunity afforded them under section 8541. . . ."   Majority Opinion at 610.   This is incorrect. Appellants found it "unnecessary to address the other criteria set forth in § 8542 of the Act" because the lower court only addressed the duty question and they assumed that the other criteria were "clearly met." (Brief for Appellants at 19).   In fact, appellees, in their brief, conceded that the real property exception "could conceivably apply in this case since the injury allegedly occurred in a Camp Hill Borough Park." (Brief for Appellees at 5).   While this Court can, of course, affirm the lower court upon a basis other than that which the later relied, *see Lobianco v. Property Protection, Inc.,* 292 Pa. Superior Ct. 346, 359, 437 A.2d 417, 424 (1981), I only wish to note that this issue, the scope of the § 8542(b)(3) exception to the general immunity rule, was neither fully briefed by the parties nor addressed by the court below.

*supra,* where the plaintiff was allegedly assaulted and raped in a Philadelphia subway concourse, the court noted that "the Legislature recognized that liability should be imposed where the municipality controls and possesses real property...." *Hamm v. SEPTA, supra* at 203–04 *(dictum).* Also instructive is *Mascaro v. Youth Study Center,* 89 Pa. Commonwealth Ct. 388, 492 A.2d 786 (1985). There the plaintiffs sued the City of Philadelphia, its Youth Study Center, and the City's former managing director for damages for personal injuries inflicted upon them by an escaped inmate of the Center. The plaintiffs alleged, *inter alia,* that the defendants failed to properly maintain the locks, doors, and windows of the Center. In finding that the defendants owed plaintiffs a duty of care as set forth in Restatement § 365 (dangerous disrepair of land), the court held that "the [real property] exception was intended to waive immunity in all cases where the agency's care, custody and control of real property resulted in injuries to others for which damages are recoverable under the common law." *Id.* at 395, 492 A.2d at 789. *But see Evans v. City of Pittsburgh,* 89 Pa. Commonwealth Ct. 626, 629, 492 A.2d 1209, 1211 (1985) (police had neither control nor possession of building in which hostages were held; merely cordoning off the area surrounding the building insufficient to show such control).

The majority, on the other hand, quotes portions of *Vann v. Board of Education,* 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983), in finding the appellees' acts do not come within the real property exception. In *Vann,* the plaintiff minor was walking adjacent to a school at 11:00 p.m. when she was assaulted, forceably taken through an unlocked school gate to an unlit area of the school grounds, and beaten. The court held that § 8542(b)(3)

> impose[s] liability only for negligence which makes government-owned property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may be reasonably foreseen to be used. Violent criminal acts such as occurred here are not

a reasonably foreseeable use of school property such that the exception will be applied.

*Id.* at 607–08, 464 A.2d at 686 (footnote omitted). *Vann* is factually and legally distinguishable from the instant case.

Here, as is clear from the above discussion of Restatement § 344, criminal acts are a reasonably foreseeable occurrence at the Park such that liability could be imposed on appellees. Appellant Lisa Casey attended swimming lessons at the Borough's invitation, and the Borough may have had notice of a previous, similar criminal attack. Thus appellant Lisa Casey was not simply a member of "the public at large." *Id.* at 608 n. 5, 464 A.2d at 686 n. 5.

Furthermore, I believe that the real issue in *Vann* was whether or not a duty was owed the plaintiff, a § 8542(a)(1) question, and not whether the school district's acts came within the § 8542(b)(3) exception. Certainly the school may have been negligent in not securing the gate or in not lighting the school grounds properly (acts going to the maintenance or control of the property), *but the district owed the plaintiff no duty of care. Vann* held so. *Id.,* 464 A.2d at 686 n.5. That the *Vann* court was preoccupied by the duty, if any, owed to the plaintiff there is demonstrated by the caselaw discussed therein. *Vann,* in fact, cites with approval *Hamm v. SEPTA, supra,* and *Fedullo v. SEPTA, supra,* noting that liability in those cases was "predicated on the duty of the Transportation Authority to protect its business invitees from foreseeable criminal activity, not merely on the fact that the attacks occurred on publicly owned land." *Vann v. Board of Education, supra* 76 Pa. Commonwealth Ct. at 607, 464 A.2d at 686. In *Hamm* and *Fedullo,* the plaintiffs alleged that there was improper security and poor lighting, and thus the City of Philadelphia may have been negligent in failing to properly police the subway system. *Vann,* then, arguably supports the result I would reach here. Moreover, *Vann* cites with approval *Bersani v. School District,* 310 Pa. Superior Ct. 1, 456 A.2d 151 (1983), which held that "a school district may be ... liable for negligence in maintenance and control of

property when injury results to a public invitee. . . ." *Vann v. Board of Education, supra* 76 Pa. Commonwealth Ct. at 608 n. 5, 464 A.2d at 686 n.5 (in *Bersani,* the plaintiff was hurt playing softball at a schoolyard where such game was regularly played; possible negligence of school district in where "home plate" was positioned). Here, I have demonstrated that appellant Lisa Casey is owed a duty stemming from her status as a business invitee. Therefore, *Vann* does not control the result in the instant case.

Nor do the "school supervision" cases cited by the majority deprive appellant Lisa Casey of her cause of action. *See Close v. Voorhees,* 67 Pa. Commonwealth Ct. 205, 210–11, 446 A.2d 728, 732 (1982) (student stabbed to death another student; supervision of students not related to care, custody or control of real property); *Robson v. Penn Hills School District,* 63 Pa. Commonwealth Ct. 250, 252–54, 437 A.2d 1273, 1275–76 (1981) (student struck in his left eye by a pencil thrown by a classmate; same); *Wimbish v. School District,* 59 Pa. Commonwealth Ct. 620, 623–24, 430 A.2d 710–712 (1981) (plaintiff injured on school grounds while engaged in school activity; school district's failure to employ trained personnel, to supervise its employees properly, and to render prompt medical attention not within exception); *Munoz v. School District,* 23 D. & C.3d 473, 473–75 (Ct.C.P.Phila. County 1982) (plaintiff entered Housing Authority property while attending school and was injured; inadequate supervision or security not within exception); *see also Lewis v. Hatboro-Horsham School District,* 77 Pa. Commonwealth Ct. 287, 465 A.2d 1090 (1983) (plaintiff hit in the eye by a baseball batted by his school baseball coach; exception inapplicable where cause of the accident was not negligence in the care, custody or control of real property). Those cases are distinguishable. Here, appellees' alleged negligent acts all dealt with, in one way or another, the maintenance or "policing" of the property, whereas in the

school cases what was involved was the policing of the students.[14]

The majority also states that, because § 8542(b)(3) is an exception to the general rule of governmental immunity of § 8541, it must be narrowly construed, citing 1 Pa.C.S.A. § 1924 and *Borenstein v. City of Philadelphia*, 595 F.Supp. 853 (E.D.Pa.1984). These authorities are, to begin with, contradictory. Section 1924 states, in pertinent part, that "[e]xceptions expressed in a statute shall be construed to exclude all others"; it is of no aid in construing the scope of the exceptions themselves. *Borenstein*, on the other hand, held that "it would not be inconsistent with the purpose of the [Political Subdivision Tort Claims Act] for a particular community to conclude that the fiscal burden of an enlarged waiver of immunity would not be so great as to outweigh the public interest in compensation of victims of negligence in certain classes of cases not included in the Act's eight exceptions." *Borenstein v. City of Philadelphia, supra* at 858 (City of Philadelphia's waiver of immunity with respect to certain claims asserted against police officers held valid and applicable). Indeed, *Borenstein* arguably supports the proposition that a local agency can waive its immunity defense even if the alleged negligent acts of it or its employees do not come within one of the § 8542(b) exceptions and the local agency has not specifically enacted additional waivers:

> Although the availability of the governmental immunity defense and the need for certain exceptions to that defense are potentially matters of statewide concern, *it is apparent that the question whether any individual municipality should assert that defense in a particular class of cases is a matter of peculiarly local concern.*

*Id.* (emphasis added).[15] *See also* 42 Pa.C.S.A. § 8563(a) ("A local agency may promulgate rules and regulations not

---

**14.** Of course there must be a duty owing to the students to meet the § 8542(a)(1) requirement. That there is such a duty in the absence of governmental immunity is unquestioned. *See Simonetti v. School District*, 308 Pa.Superior Ct. 555, 454 A.2d 1038 (1983) (duty to properly supervise students); *Cromley v. Loyalsock Township School District*, 226 Pa.Superior Ct. 433, 310 A.2d 330 (1973) (same).

**15.** In this regard, *see supra* note 13.

inconsistent with this subchapter [dealing with actions against local agencies] in order to implement the intent of this subchapter.").

In any event, to the extent that *Borenstein* stands for the proposition that waivers of immunity are to be strictly construed,[16] I believe that the better rule of construction is as stated by President Judge Coffroth of the Court of Common Pleas of Somerset County in his opinion discussing what he calls the "far from perspicuous" distinctions between the real and personal property exceptions contained in 42 Pa.C.S.A. § 8542(b)(2) and (3):

> It seems to us that no matter whether the statute is viewed in relation to the state of the law prior to the judicial decisions abolishing judicially created immunity, or to post-abolition law, the enumerated instances in which immunity is waived represent such a major liberalization of thinking as respects governmental immunity as to be remedial in purpose, consistent with the Supreme Court's rationale in the abolition decisions. . . . .
>
> [T]he facts of injustice and irrationality remain to support the principle of construction here advocated which involves legislative ambiguities in favor of liability, that is, in favor of justice to the victim of governmental wrongdoing.

*Garman v. Conemaugh Township School District,* 29 D. & C.3d 478, 493–94 (Ct.C.P. Somerset County 1984). *See also* 1 Pa.C.S.A. § 1928 (remedial provisions of a statute are to be liberally construed); *cf.* Note, *The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability,* 84 Dick.L.Rev. 717, 731 (1980) ("The objectives of the Act were not antithetical to the social philosophy expressed in the *Ayala [supra]* decision." (footnote omitted)). Accordingly, I would hold that the real property exception includes negligent acts pertaining to the policing of real property.

**16.** Note that the waiver construed by the *Borenstein* court was the City of Philadelphia's *additional* waiver. *Borenstein v. City of Philadelphia, supra* at 859.

In conclusion, then, I believe that (1) appellees owed appellant Lisa Casey a duty of care as set forth in § 344 of the Restatement by virtue of her being a business invitee of the Borough; (2) to the extent that appellants allege negligence of the appellees only in the failure to properly supervise or police the Park, her status as a business invitee created the requisite "special relationship" between her and the Borough; and (3) appellees' alleged negligent acts were within the scope of the "care, custody or control of real property" exception because such acts concerned the maintenance and policing of the property.[17]   Thus, I would reverse the lower court's order sustaining appellees' demurrers and dismissing appellants' amended complaint and would remand this case for further proceedings.

---

**17.**  Besides the indignities appellant Lisa Casey suffered at the hands of defendant Geiger and the fact that appellees could possibly have prevented such attack, appellants are also scolded by the majority for this "wasteful and counterproductive" litigation.   Majority Opinion at 290 n. 6.   To the contrary, I believe that this litigation serves to aid in defining the scope of the Political Subdivision Tort Claims Act and in highlighting the inequities therein.