**Jules BORENSTEIN**

v.

**CITY OF PHILADELPHIA,
Russell Briggs.**

**Civ. A. No. 84–2132.**

United States District Court,
E.D. Pennsylvania.

Oct. 11, 1984.

David Kairys, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for plaintiff.

John F.X. Monaghan, Asst. City Sol., City of Philadelphia, Law Dept., Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Jules Borenstein filed this civil rights action against the City of Philadelphia and Officer Russell Briggs on May 2, 1984. The complaint alleges claims against the defendants under 42 U.S.C. § 1983 due to the allegedly unlawful arrest and confinement of plaintiff in May of 1982. Plaintiff also asserts pendent state law claims against defendants for assault, battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence and negligent hiring, retention and supervision.

On May 25, 1984, defendants filed the motion to dismiss presently pending before me. Plaintiffs responded to that motion on July 20. Defendants have not replied to plaintiff's submission.

Defendants attack the complaint on numerous grounds. I will discuss each of defendants' arguments in the order in which they are asserted.

## A. Direct Constitutional Claims

Defendants argue that plaintiff may not assert his claims directly under the Fourth, Fifth or Fourteenth Amendments of the Constitution. *DiGiovanni v. City of Philadelphia*, 531 F.Supp. 141 (E.D.Pa.1982); *Jones v. City of Philadelphia*, 481 F.Supp. 1053 (E.D.Pa.1979). However, the complaint does not attempt to raise claims directly under these constitutional provisions. The only reference to these amendments is found in ¶ 22 of the complaint which reads:

> By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

Moreover, the jurisdictional allegations in the complaint state only that the "action" is brought pursuant to 42 U.S.C. § 1983. Complaint ¶ 1. Thus, plaintiff has not sought to raise the types of claims which defendants seek to dismiss.[1]

## B. § 1983 Liability of the City of Philadelphia

The motion to dismiss also contends that the complaint does not allege a policy or custom of the City of Philadelphia which is linked to the unlawful conduct. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Supreme Court determined that, although municipalities may be liable under § 1983, they could not be sued under that statute solely on the basis of vicarious liability. A plaintiff must establish that his injury is attributable either to an implicit or to an explicit policy or custom of the municipality.

Also, the Court of Appeals for the Third Circuit has directed that civil rights complaints must be pleaded with specificity and may not merely make conclusory allegations of constitutional deprivations or the

existence of municipal policies. *E.g., Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981) (per curiam); *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir.1976). Such complaints must contain some minimal factual presentation which supports the broad conclusions asserted.

Only three paragraphs of the complaint are relevant to the determination whether these requirements have been met in the claims against the City.

18. Defendant City of Philadelphia, as a matter of policy and practice, has intentionally and deliberately failed to adequately discipline, train or otherwise direct police officers concerning the right of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct described above.

19. Defendant City of Philadelphia, as a matter of policy and practice, has intentionally and deliberately failed to properly sanction or discipline police officers, including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police, including defendants in this case, to engage in unlawful conduct.

20. Defendant City of Philadelphia, as a matter of policy and practice, has intentionally and deliberately failed to sanction or discipline police officers, including defendants in this case, who are aware of and subsequently conceal violations or the constitutional rights of citizens by other police officers, thereby causing and encouraging police, including defendants in this case, to engage in unlawful conduct.

These allegations apparently satisfy the terms of *Monell*. They state that certain policies of the City of Philadelphia have a causal relationship to the injuries sustained by plaintiff. It is much more difficult, however, to determine whether the complaint presents these allegations of municipal policy with sufficient specificity.

---

1. The City of Philadelphia apparently files a relatively standardized motion to dismiss in a substantial proportion of the civil rights suits in which it is a defendant. Although this is not improper practice when cases raise the same legal issues, it is important that a litigant review the claims presented in each case and only present those which are applicable.

Obviously, it is difficult for a plaintiff in a case such as this to know, in any detail, facts surrounding municipal policies or customs other than those policies which have taken the form of local ordinances. However, if one is to sort out those claims which have no substantial basis in fact, it is necessary to require that the complaint contain some degree of factual support for such claims. Such factual support is absent from the allegations against the City in this case.

The complaint adequately recites facts in support of the civil rights claim against Officer Briggs. But those portions which attempt to extend responsibility for plaintiff's injuries to the City present only conclusions. These paragraphs state that the City "intentionally and deliberately," in accordance with "policy," failed "adequately" or "properly" to train or to sanction officers. They also state that these alleged policies "caus[ed] the defendant officers in this case to engage in the unlawful conduct described above." Complaint at ¶ 18. Not a single "fact" is presented in any of these paragraphs which would tend to establish the existence of any of these alleged policies. Therefore, I will dismiss the § 1983 claim against the City of Philadelphia. This dismissal is without prejudice to plaintiff's right to amend the complaint within twenty days of the date of this Memorandum if he can properly allege a basis for liability on the part of the City. *See Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir.1976).

C. *Pendent State Claims*

■ With regard to the wide range of pendent state law claims asserted by plaintiff, defendants argue that all such pendent claims are barred by the Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat.Ann. §§ 8541 to 8564 or that they should be dismissed for lack of pendent jurisdiction should the federal question

claims be dismissed. The PSTCA protects from liability all municipalities and municipal employees acting within the scope of their offices unless the liability-producing conduct falls within one of eight statutory exceptions. 42 Pa. Cons.Stat.Ann. § 8542. Plaintiff does not dispute that the claims asserted in the present action do not fall within any of these categories.[2]

However, plaintiff argues that the City of Philadelphia has waived its immunity with regard to claims asserted against police officers. In support of this proposition, plaintiff cites to Chapter 21–700 of the Philadelphia Code:

21–700 Waiver of Governmental Immunity

21–701(a) The City shall not plead governmental immunity as a defense in any civil action commenced by any person sustaining bodily injury or death caused by negligence or unlawful conduct of any police officer while the latter is acting within the scope of his office or employment.

(b) Nothing contained herein shall be construed to repeal or modify the Workman's Compensation Laws.

Defendant has not responded to this argument or contested the existence and applicability of this ordinance.

This ordinance was first enacted by the City Council of the City of Philadelphia in 1962. At that time, the ordinance provided for a waiver of the defense of governmental immunity in civil actions arising out of alleged negligence or unlawful conduct of "any employee." In 1971, the ordinance was amended to limit the waiver of governmental immunity to cases involving the acts of police officers only.

Both the original enactment of the waiver and the amendment to the ordinance occurred during the time in which governmental immunity was a matter of state

---

**2.** Paragraph 13 of the complaint states that "[d]efendant took plaintiff's personal belongings without providing him a receipt and failed to return a small penknife that was a valued gift from [plaintiff's] deceased father-in-law." The PSTCA excepts from this blanket of immunity, losses of personal property in the possession or control of a municipality, 42 Pa. Cons.Stat.Ann. § 8542(b)(2). Therefore, the City and defendant Briggs may not assert immunity with respect to the claimed property loss.

common law and not statutorily mandated. In 1973, the Supreme Court of Pennsylvania abrogated the judicially-created immunity of local governments in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). The PSTCA was enacted in 1978 as a response to concerns about the effects of the *Ayala* decision on municipal budgets. Philadelphia has not altered the terms of the waiver ordinance since the codification of governmental immunity in the PSTCA.

Philadelphia's Home Rule Charter, 53 Pa. Stat.Ann. §§ 16251 to 17096, authorizes the City to pass legislation such as 21-701. The primary state statutory limitation on this power is found in § 13133 of Title 53 of the Pennsylvania Code. That provision states in pertinent part:

> Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are—
>
> (b) Applicable in every part of the Commonwealth.
>
> (c) Applicable to all the cities in the Commonwealth.

If the grant of immunity found in the PSTCA were to be treated as a "power" conferred on all municipalities, it is possible to construe Philadelphia's attempted waiver of its immunity as an attempt to limit such "power," contrary to the terms of § 13133.

■ However, subsections (b) and (c) of § 13133 have been consistently interpreted by the Pennsylvania courts to place very few restrictions on the legislative authority of "first class cities" such as Philadelphia. A local ordinance will only run afoul of the limitations in § 13133 if it affects substantive matters of statewide concern. *E.g.,* *School District of Philadelphia v. Zoning Board of Adjustment, City of Philadelphia,* 417 Pa. 277, 207 A.2d 864 (1965); *Ebald v. City of Philadelphia,* 387 Pa. 407, 128 A.2d 352 (1957); *In re Addison,* 385 Pa. 48, 122 A.2d 272 (1956), *appeal dismissed,* 352 U.S. 956, 77 S.Ct. 353, 1 L.Ed.2d 316.

■ Although the availability of the governmental immunity defense and the need for certain exceptions to that defense are potentially matters of statewide concern, it is apparent that the question whether any individual municipality should assert that defense in a particular class of cases is a matter of peculiarly local concern. Thus, the City is empowered to enact an ordinance such as 21-701.

■ Furthermore, the PSTCA itself does not preclude the waiver of immunity found in 21-701. The Act specifically states that local communities may enact rules and regulations as long as they are "not inconsistent" with the other provisions of the PSTCA. 42 Pa. Cons.Stat.Ann. § 8563(a). Philadelphia's waiver of immunity is in no manner inconsistent with the PSTCA. That act was intended to reinstate the governmental immunity which had been abolished in *Ayala. See Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981); Note, "The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability," 84 *Dickinson L.Rev.* 717 (1980). Although the Act lists only eight exceptions to the broad grant of immunity found in § 8541, these are essentially the exceptions which existed under the common law of governmental immunity in Pennsylvania. They are not necessarily exclusive; and it would not be inconsistent with the purpose of the PSTCA for a particular community to conclude that the fiscal burden of an enlarged waiver of immunity would not be so great as to outweigh the public interest in compensation of victims of negligence in certain classes of cases not included in the Act's eight exceptions. In fact, the May 1978 Report of the Joint State Government Commission on Sovereign Immunity—the report which the Pennsylvania Supreme Court identified in *Carroll* as the "basis for the Political Subdivision Tort Claims Act"—states that "as ... experience with costs of claims and administrative expenses accumulates, limited waivers in other areas

of possible liability may be added." Joint State Government Commission, *Sovereign Immunity* 10 (May 1978).

■ Philadelphia determined in 1962 that it was in the interest of its citizens and within the financial abilities of the City to compensate persons injured by the negligence or willful misconduct of its employees. That decision was reevaluated in 1971 and the City reconfirmed its determination that the balance favored compensation of victims when the actions of police officers were the alleged cause of the injury. Although this all occurred during the time of judicially-created governmental immunity, the range of conduct which was protected by governmental immunity at that time was substantially equivalent to that now protected by statute. Thus, there is no reason to believe that the waiver enacted by the City Council of Philadelphia in 1962 and 1971 is not fully applicable today. Accordingly, I will deny the City's motion to dismiss the pendent state law claims with prejudice. However, in light of the dismissal of the federal question claims against the City of Philadelphia, I will decline to exercise pendent jurisdiction of the state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Of course, this determination is without prejudice to plaintiff's right to refile the pendent claims should he amend his § 1983 allegations against the City.

■ Turning to the pendent state law claims against defendant Briggs, the language of 21–701 does not reflect any intention to waive the defense of official immunity which protects municipal employees from liability for their negligent acts. 42 Pa. Cons.Stat.Ann. § 8545. Because waivers of immunity are to be narrowly construed, *see Vann v. Board of Education of School District of Philadelphia,* 76 Pa.Cmwlth. 604, 464 A.2d 684 (1983); *Smith v. Lancaster County Tax Bureau,* 23 D. & C.3d 734 (1982), I cannot interpret the City's waiver of "governmental immunity" as a waiver of defendant Briggs' official immunity.

■ However, a municipal employee is only immune from suit under the PSTCA for his negligent conduct. Willful misconduct is specifically excluded from the protection of the Act. 42 Pa. Cons.Stat.Ann. §§ 8542(a)(2) and 8550. Thus, to the extent that the complaint alleges intentional tortious conduct on the part of defendant Briggs, I will allow the pendent state law claims to remain in this litigation.

An order reflecting these rulings accompanies this Memorandum.