## Williams v. SEPTA

*George J. O'Neill*, for plaintiff.
*Delores Lanier*, for defendant SEPTA.
*Dawn A. Segal*, for defendant City of Philadelphia.

GORDON, *J.*, July 12, 1989 — This civil action in trespass was instituted by plaintiff against defendants for personal injuries as a result of a motor vehicle accident involving a Southeastern Pennsylvania Transportation Authority trolley and motor vehicle operated by a City of Philadelphia police officer.

On March 6, 1981, plaintiff, Kathleen Williams, boarded a SEPTA route 23 trolley, which was traveling northbound on Germantown Avenue. The trolley collided with an unmarked police car owned by the City of Philadelphia and operated by police officer Louis Kober, at the intersection of Germantown Avenue and Armat Street. Plaintiff, after board-

ing, walked to the back of the vehicle as it started moving forward. As she started to sit down the trolley stopped suddenly, because of the collision, throwing her off her feet. As a result of the collision, plaintiff twisted her ankle, hit her lower back on the vertical pole and caught her fall with her hands on the floor.

SEPTA's witnesses, Fred Corbett, the trolley operator, and David Harvey, an independent witness, testified that the police car, traveling southbound on Germantown Avenue, turned left on to Armat Street without making a left turn signal and hit the trolley. Mr. Corbett stated that when the trolley was about one-third of the way across Armat Street, contact was made with the police car. According to the testimony, the police car started its turn about one and a half car lengths before it reached the intersection, without signaling for a left turn or sounding the siren. Likewise, Corbett failed to sound the warning gong of the trolley when he first saw the police car making its turn. Corbett estimated that the auto made its left turn at approximately 40 miles per hour and the trolley was traveling two to three miles per hour. At the time of the accident, two "No Left Turn" signs were posted at the intersection, forbidding traffic driving southbound on Germantown Avenue from making a left turn onto Armat Street.

Officer Kober testified to another version of how the accident occurred. He testified that his vehicle had been stopped for about 15 to 20 seconds when the trolley car proceeded through the intersection after a red light and struck his automobile, which immediately stopped. Officer Kober stated that when he saw the trolley starting forward, he blew his horn to get the operator's attention, but the trolley pro-

ceeded forward. Kober testified that Corbett apologized for not seeing the police automobile or for not looking in its direction.

The case was tried before this court and a jury from September 9 to 15, 1987. The jury answered interrogatories on the "jury verdict slip," finding the defendant SEPTA 25-percent negligent, but that its negligence *was not* a substantial factor to the injuries of plaintiff. The jury found that the city's police officer was 75-percent negligent in the operation of the police automobile and that his negligence *was* a substantial factor contributing to the plaintiff's injuries. The jury determined that plaintiff had not suffered a permanent loss of bodily function and assessed her damages at $20,000 of which they found $18,000 compensation for pain and suffering.

Plaintiff filed timely post-verdict motions and moved this court to enter judgment in her favor against defendant SEPTA notwithstanding the verdict, or grant a new trial in which she raised several issues. Plaintiff also contended that the city should be assessed full damages for 75 percent of the award despite the fact that the jury found the plaintiff's injuries are not permanent.

The standard for review of a trial court's grant of motion for a new trial generally is whether the trial court clearly abused its discretion or committed an error of law which controlled the outcome of the case. *Westinghouse Elevator Co. v. Herron,* 514 Pa. 252, 523 A.2d 723 (1987). In *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985), Justice McDermott stated that, "[O]ur court has consistently held that appellate review of the trial court's grant of a new trial is to focus on . . . whether the appellate court can find support in the record for the jury's verdict." A new trial restores a

case to the status it had before the trial took place and is fully open to be tried de novo as to all parties and all issues. *Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986).

The first alleged error is based upon the jury's finding that the SEPTA operator was 25-percent causally negligent, but that his negligence was not a substantial factor in causing the accident. Plaintiff contends that this finding was an unnecessary characterization which is inconsistent with the finding of causal negligence of 25 percent. Specifically, plaintiff alleges that the jury made inconsistent findings and requests that the court should award a molded judgment on the findings of negligence. It appears the trial court's instructions to the jury adhered to the applicable proximate cause legal principles. The jury verdict was appropriate and consistent with the law.

In this court's opinion the charge to the jury concerning the definition of proximate cause in a negligence action was adequate and thus a new trial is unwarranted. The jury, faced with conflicting testimony between SEPTA's witnesses and the city's witnesses, had to determine the weight of credibility. After doing so, they determined the proportion of negligence attributable to the city and to SEPTA, respectively. A new trial should not be granted because of a mere conflict in testimony; it should be awarded when the "jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Thompson, supra.*

Plaintiff protests the wording of the special interrogatory sent out to the jury. We believe this issue has been waived. In *Bauman v. Bauman,* 212 Pa. Super. 138, 239 A.2d 822 (1968), the Superior

Court held that the contention that the jury's response to interrogatories created an inconsistency in the verdict and pleadings was waived by failure to assert it in the trial court, particularly where the appellant had explicitly assented to the submission of the interrogatories to the jury. When the trial court concluded its charge to the jury, the attorneys were invited to a conference to make any exceptions to the interrogatories. Plaintiff's counsel did not object to the alleged inconsistency when the interrogatories were proposed, discussed and submitted.

By failing to object at the time the special interrogatories were given to the jury, plaintiff has waived any objections. *Commonwealth v. Lloyd*, 376 Pa. Super. 188, 545 A.2d 890 (1988). Thus, plaintiff's objections have not been preserved for appellate review. *Commonwealth v. Shain*, 324 Pa. Super. 456, 471 A.2d 1246 (1984).

Requiring a timely specific objection to be taken in the trial court ensures that the trial judge has an opportunity to correct all alleged trial errors. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974). Whether the jury's verdict was inconsistent or not, plaintiff is barred from protesting the trial court's alleged erroneous special interrogatories at the post-trial motions level.

Plaintiff relies on *Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 506 Pa. 181, 484 A.2d 744 (1984), to support her inconsistency of the verdict argument. However, this case is distinguishable from the instant case. Initially, the party seeking the new trial in *Ferrick* did preserve the issue of protecting the jury verdict or making the assertion that the verdict was inconsistent with post-trial motions (because the objection to the jury verdict was made at the time of trial). Moreover, in *Ferrick*, a comparative negligence case, the court appor-

tioned damages as between the plaintiff, (20-percent negligent) and defendant (80-percent negligent). The Supreme Court held that plaintiff could not simultaneously escape liability for his 20-percent contributory negligence, because it was not proximately related to the injury, and also be liable for the same contributory negligence. In that case there had to be a remittitur of 20 percent of the verdict.

The Comparative Negligence Act provides that a plaintiff may recover damages whenever his negligence is not greater than the negligence of the "defendants against whom recovery is sought," and that, "[w]here recovery is allowed against more than one defendant, each defendant shall be liable for damages in the ratio of the amount of causal negligence attributed to all defendants against whom recovery is allowed." *Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 1609 (1983), quoting 42 Pa.C.S. §7102. Here, this is an apportioning of damages case between two defendants guilty of wrongful conduct, but only the negligent acts constituting a substantial factor in causing plaintiff's injuries are the negligence upon which legal causation of liability is predicated. One defendant, both defendants, or neither defendant could have been liable. The jury found that both defendants contributed to this accident, but that SEPTA's 25-percent negligence was not a substantial contributing factor to the causation. The City of Philadelphia was held primarily liable. No Comparative Negligence Act is involved. The court's instructions to the jury were that they could find the City of Philadelphia liable, or SEPTA liable, or both liable. The record reflects no objection to that instruction. As stated above, plaintiff has waived her objection to the interrogatories.

In *Volponi v. Borough of Bristol,* 122 Pa.Commw. 192, 551 A.2d 657 (1988), the Commonwealth Court held that the jury verdict in favor of the plaintiff and against the defendant driver who struck her was supported by substantial evidence and was not inconsistent. The jury determined that the defendant borough's negligence in failing to maintain a no-parking restriction at the scene of the accident was not a substantial contributing factor to plaintiff's injuries, and assessed 100-percent liability upon the defendant driver whose negligence was found to be a substantial factor in causing plaintiff's harm. Plaintiff in the instant case may rely on the *Volponi* premise, that the 100-percent liability should be assessed against the City of Philadelphia as the substantial contributing factor to the plaintiff's injuries. However, defendant City of Philadelphia's liability is limited by the Tort Claims Act in the area of pain and suffering, which will be discussed, *infra.*

Plaintiff next contends that she is entitled to a default judgment against SEPTA or a new trial as a sanction against defendant SEPTA for failure to respond to plaintiff's request for production of documents. Specifically, plaintiff alleges that defendant SEPTA failed to disclose a list of witnesses before and at the time of trial and because of this conduct, plaintiff alleges she was prejudiced during the course of the trial. These were names of passengers on the trolley which were gathered by Corbett after the accident. The names were never forwarded to defendant.

A default judgment is one of the proper sanctions which may be imposed against a party who, without satisfactory excuse, fails to make timely response to a mandatory discovery request. *Commonwealth v. Redek Auto Service,* 73 Pa. Commw. 222, 458 A.2d

614 (1983). Defendant SEPTA concedes that it failed to provide investigation documents. Plaintiff, however, never took affirmative steps to obtain the requested information. Plaintiff never wrote a letter requesting SEPTA to respond nor filed a motion to compel answers to a request for production of documents. See Pa.R.C.P. 4019.

Furthermore, the court gave plaintiff the opportunity to contact these witnesses on Friday, September 11, 1987 before trial resumed on Monday, September 14, 1987. The court was prepared to make an appropriate order to allow plaintiff to proceed without prejudicing her case. No attempt to contact these witnesses was made over the weekend. Plaintiff claimed that there was not enough time to make contact. The court is not certain how plaintiff was prejudiced since an opportunity was provided to at least try to contact some of the witnesses, and plaintiff failed to do so. Furthermore, none of these persons were offered as trial witnesses by SEPTA. Sanctions against SEPTA were denied since plaintiff never made a mandatory discovery request nor has shown how she was prejudiced by SEPTA's non-disclosure of the investigation documents.

Plaintiff next contends that the city should be assessed full damages for 75 percent of the award, despite the jury's finding that plaintiff's injuries were not permanent, under the city ordinance waiving immunity for torts committed by police officers. Specifically, plaintiff bases her argument on section 21-701 of the Philadelphia Code which provides:

"§21-701: *Police Officers:* (a) The city shall not plead governmental immunity as a defense by any action commenced by any person sustaining bodily injury or death caused by negligence or unlawful

conduct of any police officer while the latter is acting within the scope of his office or employment."

The City Council of Philadelphia enacted the first version of section 21-701 in 1962. The amendment in question was adopted in 1971. This section operates as a limited waiver by the city granted by the Political Subdivision Tort Claims Act in 42 Pa.C.S. §§8541-8564 even though the ordinance predates the act. *McCreary v. City of Phila.*, 95 Pa. Commw. 285, 505 A.2d 385 (1986). The city has the authority to waive its immunity by ordinance, *Ludwin v. Port Authority Transit Corp.*, 102 Pa. Commw. 36, 517 A.2d 1006 (1986), but is section 21-701 intended to include the area of negligent use of motor vehicles by city police officers? We believe not.

In 1929 the legislature passed a statute which provided that "Every county, city, borough, incorporated town, or township within this commonwealth employing any person shall be jointly and severally liable with such person for any damages caused by the negligence of such person while operating a motor vehicle upon a highway in the course of their [sic] employment."[1] This statute was derogatory of the common law and its purpose was to abrogate municipalities of the cloak of governmental immunity where a motor vehicle was involved in an incident. See *Logan, to use v. Bethlehem City*, 324 Pa. 7, 187 Atl. 389 (1936); *Koscelek v. Lucas,* 157 Pa. Super. 548, 43 A.2d 550 (1945); *Mooney v. Philadelphia,* 115 Pa. Super. 433, 175 Atl. 886 (1935). This was specifically held to in-

---

1. The Act of May 1, 1929, P.L. 905, section 619, presently found at 75 P.S. §1576, had been amended several times before it was repealed by the Act of November 26, 1978, P.L. 1399, §802, 53 P.S. §5311.802, known as the Political Subdivision Tort Claims Act.

372

clude police officers, *Logan, supra,* and to apply to the City of Philadelphia, *Mooney, supra.*

Based on this, it is obvious that the city had not enjoyed immunity from negligent acts involving motor vehicles since 1929. In 1978, the legislature passed the Tort Claims Act, Act of November 26, 1978, P.L. 1399, §101 et seq., 53 P.S. §5311.101 et seq., presently codified at Subchapter C of the Judicial Code of 1980, P.L. 693, §333, 42 Pa.C.S. §8541-64, designed to reinstate governmental immunity, but with statutory limitations. One of those limitations was the "exception" that reinstated the 1929 waiver, 53 P.S. §5311.22(b)(1); 42 Pa.C.S. §8542(b)(1).

The Tort Claims Act established a cap on the amount of liability and placed thresholds to recovery for pain and suffering with regard to negligence in the operation of motor vehicles. The "motor vehicle" exception of the Tort Claims Act replaced the 1929 Act as 53 P.S. §5311.802.

This leads us to pose the question that if the city did not enjoy immunity from negligent acts involving motor vehicles, what was the necessity in passing section 21-701? In order to answer this question, we must look to the legislative intent. In construing a municipal ordinance, a court must ascertain and give effect to the legislative intention as expressed in the language. *Clearview Bowling Center Inc. v. Hanover Borough, York County,* 430 Pa. 579, 244 A.2d 20 (1968); *Manoa Shopping Center Inc. v. Zoning Hearing Board of Haverford Twp.,* 11 Pa. Commw. 569, 314 A.2d 516 (1974). The polestar for construction of a statute or an ordinance is the intention of the legislative body. When the words are not explicit, it behooves the

interpreter to consider the purpose of the law. *Clearview Bowling Center Inc. v. Hanover Borough, York County, supra.*

As a guide to the legislative intent, the court may consider such matters as the occasions and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied, the object to be obtained and the consequences of the particular interpretation. 1 Pa.C.S. §1921. *Fireman's Fund Insurance Co. v. Nationwide Mut. Ins. Co.,* 317 Pa. Super. 497, 464 A.2d 431 (1983); *Busy Beaver Bldg. Centers v. Tueche,* 295 Pa. Super. 504, 442 A.2d 252 (1981); *Commonwealth v. Hess,* 270 Pa. Super. 501, 411 A.2d 830 (1979); *Commonwealth, Higher Education Assistance Agency v. Abington Memorial Hospital,* 478 Pa. 514, 387 A.2d 440 (1978).

Applying the foregoing principles, we conclude that section 21-701 was not enacted to apply to the negligent use of an automobile by police officers. In viewing the historical concept of the city's liability in the 1962 and 1971 bills respectively, the intent of section 21-701, which specifically applied to police actions, was to cover the police misconduct situations where the city could have claimed governmental immunity each time these types of cases arose.[2] The City Council of Philadelphia enacted the first version of this code section in 1962. That version waived immunity in all actions arising out of negligent or unlawful conduct of any city employee. In 1971 the section was revised and narrowed, so that the ordinance applied only to police officers.

The purpose of section 21-701 indicates that City

2. See hearings on Bill no. 1760 amending Chapter 21-700 of the Philadelphia Code before the Committee on Law and Government of the Council of the City of Philadelphia, November 17, 1971.

Council intended to target police brutality cases, and not ordinary acts of negligence by police. Levy Anderson, the city solicitor in 1971 when the ordinance was narrowed to apply to police officers only, stated in the committee hearing on Bill no. 1760 that the purpose of the bill was to limit the effect of the waiver of immunity ordinance. Anderson stated:

"This ordinance grew out of problems created when in connection with police action, bystanders and innocent people were injured, sometimes very seriously. It was concluded that it would be appropriate to enact the ordinance since there was no fault at all on the part of such individuals that the ordinary governmental immunity to which the city was entitled as all municipalities were entitled in Pennsylvania would not apply."[3]

Anderson further noted that:

"The wording of the ordinance passed in 1962 was so broad it was extended by attorneys to cases it was never contemplated to apply."[4]

He continued:

"What this would do in effect is that it would revert to the original purpose of the ordinance which is where police action is taken and some innocent person is injured the city would retain its liability."[5]

Anderson then cited one of the cases which prompted the adoption of the bill in 1962 where during a shoot-out, a police officer shot through a door and inadvertently killed a youngster.

Anderson specifically informed the committee that in vehicle cases such as police, fire vehicles or any other of the many vehicles that the city uses in

3. See hearings, *supra*, at 6.

4. See hearings, *supra*, at 7.

5. See hearings, *supra*, at 9.

performance of what were plainly governmental functions, the city would still remain liable under the ordinary principles of negligence.[6] He further cited examples of situations where liability was being imposed upon the city, sometimes in questionable cases.

When asked by Councilman Schwartz if there was any reason, if governmental immunity was going to be removed generally, "why we have to pinpoint the police department?" Anderson replied:

"[I]n my personal view, I think that the original concept of the bill was proper in terms of taking care of innocent victims of police action, and I have no conflict with that. I think it was a beneficent social purpose, and I think that it would be appropriate to retain that. But I think it ought to be retained within the original scope that was intended."[7]

Comments from Councilman Durham and others who testified during the hearings indicated the mischief to be remedied by the 1971 change was police misconduct. Further in the hearing, Bernard Gross, who was a member of the City Solicitor's Office when the 1962 measure was adopted, testifying against the bill, admitted:

"He [Anderson] is correct when he said that the original point was to worry about police brutality cases. I have no question that's what brought it on. While we looked at this the feeling was why only police brutality . . . it was basically a policy decision which was sparked by the police brutality situation but it was a policy decision that was made with intent."[8]

It is apparent from the hearing on Bill 1760 that

6. See hearings, *supra,* at 8.
7. See hearings, *supra,* at 15 and 16.
8. See hearings, *supra,* at 33.

the City Council intended to target police brutality cases and not ordinary acts of negligence by police. Since there was already a motor vehicle exception to governmental immunity in place, there was no need to further legislate in this area.

In *City of Philadelphia v. Middleton,* 89 Pa. Commw. 362, 492 A.2d 763 (1985) and its companion case, *Capanna v. City of Philadelphia,* 89 Pa. Commw. 349, 492 A.2d 761 (1985), the Commonwealth Court held that the city had effectively waived its immunity where bodily injury or death resulted from the negligent or unlawful conduct of its police officer. The facts of both cases are compatible. In *Middleton,* police officers were charged with false arrest, false imprisonment, assault, battery, and negligent denial of medical care to a diabetic who collapsed on a sidewalk, was accused by police officers of being drunk, was struck by officers, placed under arrest and was confined to a cell in excess of eight hours. In *Capanna,* city police officers, in response to a radio call to pick up a "hospital case," took decedent to a jail cell instead of to a hospital. He was found dead three hours later. The city in both cases claimed immunity under section 8542 of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8542 because the cause of action did not fall within any of the eight exceptions enumerated in the act. The court, however, found that the city had effectively waived its immunity through section 21-701 of the Philadelphia Code. Thus, police officers were held liable for their negligent conduct. These cases are distinguishable from the one at bar. The police officer in this case is charged with negligent use of a motor vehicle. Neither an intentional tort nor negligent denial of medical care is involved.

In *Borenstein v. City of Philadelphia,* 595 F.Supp.

853 (1984), the District Court held that by ordinance, the city waived governmental immunity with regards to claims asserted against police officers, but that the city's waiver was not a waiver of a police officer's official immunity from action for officer's negligent conduct, but to intentional tortious conduct. This case, analogous to *Middleton* and *Capanna, supra,* examined the historical context of section 21-701 and the Tort Claims Act and determined that since local communities may exact rules and regulations as long as they are "not inconsistent" with the other provisions of the act, Philadelphia's waiver of immunity is in no manner inconsistent with the act. *Borenstein, supra.* The act was intended to reinstate the governmental immunity, abolished in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). To reconcile section 21-701 with the act, the court noted that although the act lists only eight exceptions to the broad grant of immunity, one being the negligent operation of an automobile, they are not necessarily exclusive.

"It would not be inconsistent with the purpose of the [act] for a particular community to conclude that the fiscal burden of an enlarged waiver of immunity would not be so great as to outweigh the public interest in compensation of victims of negligence in certain classes of cases not included in the act's eight exceptions." *Borenstein,* 595 F.Supp. at 858.

We conclude, therefore, that the City of Philadelphia acted within the powers derived from its Home Rule Charter in deciding the best interest of its citizens would be served by waiving governmental immunity in cases where bodily injury or death resulted from negligent or unlawful conduct of its police officers. We further conclude, however, that

the intent of the ordinance was an attempt to deal with perceived shortcomings in police conduct, and was not intended to concern itself with operation of motor vehicles by police officers.

Abuse of police powers, and intentional tortious conduct by police persons cannot, in any way, be equated with the negligent operation of a motor vehicle. The opportunity for injury of a victim of an automobile accident is no more enhanced because the operator of a vehicle is a police officer as opposed to the mayor, the managing director, or a departmental employee of the city. And since the Act of May 1, 1929, P.L. 905 was operative in 1971 when section 21-701 was passed, to reach any other conclusion would be, in our opinion, ludicrous. Exceptions to governmental immunity are to be narrowly construed, given the expressed legislative intent to insulate political subdivisions from tort liability, *Bickert v. Borough of Riverside*, 118 Pa. Commw. 91, 545 A.2d 962 (1988). Based on the foregoing, we conclude that section 21-701 does not waive the city's immunity under the Tort Claims Act as to negligent operation of motor vehicles.

Having reached the above determination, we hold that the police officer's negligence in this case is governed by the Tort Claims Act and falls within one of the enumerated exceptions found in section 8542 of the Act, 42 Pa.C.S. §8542. The Supreme Court has recognized that the reinstatement of immunity as initially set forth in the Tort Claims Act is "absolute," although subject to certain limitations and to eight enumerated exceptions. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). One of the exceptions, found at section 8542(b)(1) of the act, is the vehicle liability exception which provides:

"(b) *Acts which may impose liability* — The

following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

"(1) *Vehicle liability* — The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air."

We conclude that Officer Kober's negligent operation of his automobile fits within the purview of the vehicle liability exception of the act. This exception provides for liability only if the motor vehicle was "in the possession or control of the local agency." *Gratkie v. Air Wisconsin Inc.*, 107 Pa. Commw. 461, 528 A.2d 1032 (1987). There is no doubt that Kober was in possession and had control of the automobile. Thus, reviewing the record reveals that the Judicial Code clearly imposes liability where the motor vehicle is operated by a commonwealth party in possession or control of the vehicle, which is the case here. The city, not having waived its rights under the act, is liable to the plaintiff pursuant to section 8542(b)(1).

Since liability has been established, the next issue concerns damages. 42 Pa.C.S. §8553(b) of the Judicial Code provides that "[d]amages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate." This act legislatively raised the shield of government immunity against any damages on account of any injury to a person caused by an act of a local agency or employee thereof. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).

The jury in this case awarded $20,000 in dam-

380

ages of which $18,000 was for pain and suffering, and found that plaintiff did not suffer a permanent loss of a bodily function. Under 42 Pa.C.S. §8553(c)(2) of the act, provision is made for compensation for pain and suffering in certain instances, one being the permanent loss of a bodily function. The act distinguishes between accident victims who undergo pain and suffering and die from their injuries or undergo permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses exceed $1,500 and those victims who experience pain and suffering and survive without the permanent consequences. *Robson v. Penn Hills School District,* 63 Pa. Commw. 250, 437 A.2d 1273 (1981). Here, the jury determined that plaintiff experienced pain and suffering but did not suffer a loss of a bodily function. This being the case, plaintiff does not meet the threshold classification as established by the legislature. Plaintiff is, therefore, limited to $2,000, the amount not awarded for pain and suffering.

Based on the foregoing, plaintiff's motion for a new trial or for judgment notwithstanding the verdict was denied.