**James E. STRAUSS, Plaintiff**

v.

**Richard SPRINGER, Robert Clift, and The City of Philadelphia, Defendants.**

**Civ. A. No. 91–439.**

United States District Court, E.D. Pennsylvania.

May 18, 1992.

---

David F. Michelman, N. Marlene Fleming, Blackburn & Michelman, P.C., Joseph McGill, Philadelphia, PA, for plaintiff.

David Garcia–Villarreal, Chief Asst. City Solicitor, Philadelphia, PA, for defendants.

## MEMORANDUM

LEOMPORRA, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff, James E. Strauss, filed a civil rights action against the City of Philadelphia and Philadelphia Police Officers Richard Springer and Robert Clift on January 22, 1991. The complaint asserts claims against the defendants under 42 U.S.C. §§ 1983, 1985 and 1988, involving the alleged unconstitutional use of excessive deadly and nondeadly force against the plaintiff on August 28, 1989. The complaint also alleges a conspiracy among the defendants to deprive plaintiff of his constitutional rights. Plaintiff further asserts pendent state law claims against the defendants for negligence, assault and battery, abuse of process and false imprisonment.[1]

On April 9, 1992, defendants filed a Motion for Partial Summary Judgment presently before me to dismiss the negligence cause of actions against the officers and the City of Philadelphia. Plaintiff responded to this motion on April 15, 1992. For the reasons explained below, this motion will be denied.[2]

---

1. By mutual agreement of the parties, the counts of abuse of process, false imprisonment and conspiracy have been withdrawn by the plaintiff.

2. Specifically, plaintiff's complaint alleges that in the early morning hours of August 28, 1989, he drove a truckload of orange juice from Allentown, Pennsylvania, to an Acme Warehouse at 31st and Thompson Streets in Philadelphia. Plaintiff was wearing a licensed handgun in a holster on his hip because of fears of assaults and robberies in that neighborhood. A security guard at the shack at Acme told him that he needed the license number of the truck. Plaintiff proceeded to the rear of his truck when two plainclothes Philadelphia Police Officers, Richard Springer and Robert Clift, acting on information about a man with a gun in a holster given to them by an unknown man, rushed to investigate.

They pulled up in an unmarked car and said "halt". Plaintiff, believing they were robbers, fled on foot up the street. Officer Springer pursuing him fired two shots. Plaintiff alleges that he removed his gun from the holster because it was an impediment to his running, but never pointed the gun at the officers. Plaintiff then ran into an open loading dock and entered a cage-like area and ran up some stairs leading to the warehouse. The door was locked and he came back down the steps and was trapped in the cage. He put his gun in the holster hoping that the robbers would be less likely to harm him.

Plaintiff contends that it was then that he heard for the first time from the man pursuing him shout, "Police, drop your gun." Plaintiff responded "I'm a truck driver, let me explain." The police officer responded that he wasn't and ordered him to drop his gun. Plaintiff laid the gun on the floor in front of him. He then

## A. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

The court does not resolve questions of disputed fact, but rather simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the non-moving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## B. BACKGROUND OF THE MOTION

In bringing his cause of action for negligence against the City of Philadelphia and the two (2) police officers, the plaintiff relies on Chapter 21–701 of the Philadelphia Code. This ordinance enacted by the Philadelphia City Council in 1971 states:

(a) "The City shall not plead governmental immunity as a defense in any civil action commenced by any person sustaining bodily injury or death caused by negligent or unlawful conduct of any police officer while the latter is acting within the scope of his office or employment."

In support of their motion for summary judgment the defendants argue that in 1978 the Pennsylvania legislature enacted statutory governmental immunity (the Political Subdivision Tort Claim Act),[3] which effectively repealed and superseded any other prior statute or ordinance involving governmental immunity, and therefore, they are immune under this statute from liability. *See* 42 Pa. C.S.A. § 8541, *et seq.* Defendants further argue in the alternative that if the court finds that the 1978 immunity statute did not supersede Chapter 21–701 of the Philadelphia Code, then they are still immune since this section was recently repealed by the Philadelphia City Council and made retroactive as of December 4, 1990; and since plaintiff's complaint was filed in January 1991, the negligence cause of action cannot be maintained because the City can now plead immunity.

Plaintiff argues that at the time the plaintiff's cause of action occurred, the City had effectively waived the governmental immunity defense under Chapter 21–701 and that it was not superseded by the 1978 governmental immunity statute. In addition, plaintiff asserts that an ordinance cannot retroactively bar plaintiff's claims which had accrued and predated the enactment of the ordinance.

## C. HISTORY OF GOVERNMENTAL IMMUNITY IN PENNSYLVANIA

Philadelphia's Home Charter Rule, 53 Pa. C.S.A. §§ 16251–17096, authorizes the City to pass legislation such as § 21–701 of the Philadelphia Code dealing with waiver of immunity. In June 1962, the City of Philadelphia enacted a municipal ordinance which was codified as Chapter 21–700 of the Philadelphia Code, and entitled "Waiver of Gov-

---

stepped back to the bottom of the stairs. As he moved back, he now saw two men pointing guns at him and believed they were going to shoot him. He held his head and heard several shots fired. One struck him in the hip. Plaintiff further alleges that he was then hit and knocked a number of times by the officers and arrested for a variety of charges. The officers fired nine shots in total at the plaintiff and the plaintiff's gun revealed that no shot had been fired.

The defendants in response assert that the plaintiff clearly heard the officers identify themselves as police officers and that when he ran he pointed his gun at the officers. They also state that when plaintiff was in the cage at the warehouse, he again pointed his gun at them prompting them to fire shots at him.

**3.** Both the 1978 governmental immunity statute and § 21–701 of the Philadelphia Code will be discussed in detail, *infra.*

ernmental Immunity". This ordinance waived immunity in all actions arising out of the negligent or unlawful conduct of any city employee. This chapter was amended in 1971 limiting the waiver at § 21–701 to cover only actions by police officers.

In *Mayle v. Pa. Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), application for reargument denied, 479 Pa. 411, 390 A.2d 181 (1978), the Pennsylvania Supreme Court abolished the doctrine of sovereign immunity except where a legislative act expressly or implicitly authorizes a suit.[4] The court held that the legislature may by law direct and grant power of consent to sue. *Id.* 388 A.2d at 720.

Shortly thereafter, the Pennsylvania legislature passed the Political Subdivision Tort Claims Act (hereinafter the PSTCA), 42 Pa. C.S.A. §§ 8541–8564, which proclaimed that all municipalities and municipality employees may not be held liable for any damages sustained by a plaintiff unless the conduct falls within one of the eight exceptions[5] listed in § 8542 of the Act.[6]

In their Motion for Partial Summary Judgment, the defendants claim that the actions of the officers and the City do not fall into one of the eight exceptions listed in PSTCA, and that although the PSTCA did not directly challenge the validity of the Philadelphia ordinance at the time it was enacted, the validity of Chapter 21–701 of the Philadelphia Code was completely lost when the PSTCA was passed.

## II. DISCUSSION

### A. THE VALIDITY OF CHAPTER 21–701 OF THE PHILADELPHIA CODE

█ The issue has been addressed by both the Pennsylvania and the federal courts which approved the validity of Chapter 21–

701 of the Philadelphia Code. In *City of Philadelphia v. Middleton,* 89 Pa.Cmwlth. 362, 492 A.2d 763 (1985), the City claimed immunity since the actions alleged did not fall within one of the eight exceptions under the Tort Claims Act. The appellee (Middleton) conceded that the actions didn't come under one of the exceptions, but argued that the City waived its immunity by virtue of § 21–701 of the Philadelphia Code. The City argued that the court should find that this code section was repealed by implication because a municipal ordinance which is contradictory or inconsistent with a subsequent state statute is impliedly repealed by the enactment of that statute. The Pennsylvania Commonwealth Court noted that this case was one of first impression in the Pennsylvania state appellate courts, but that the United States District Court for the Eastern District of Pennsylvania had addressed this issue in *Borenstein v. City of Philadelphia,* 595 F.Supp. 853 (E.D.Pa.1984).

*Borenstein* held that the PSTCA itself does not preclude the waiver of immunity found in § 21–701 of the Philadelphia Code. "The Act (PSTCA) specifically states that local communities may enact rules and regulations as long as they are 'not inconsistent' with the provisions of the PSTCA. 42 Pa. C.S.A. § 8563(a). Philadelphia's waiver of immunity is in no way inconsistent with the PSTCA. That Act was intended to reinstate the governmental immunity which had been abolished in *Ayala v. Phila. Bd. of Public Education, supra.*" The court added that the eight exceptions in the PSTCA are "not necessarily exclusive; and it would be inconsistent with the purpose of the PSTCA for a particular community to conclude that the fiscal burden of an enlarged waiver of immunity would not be so great as to outweigh the public interest in compensation of victims of

---

4. In 1973, the Supreme Court of Pennsylvania abrogated the judicially-created immunity of local governments in *Ayala v. Phila. Bd. of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973).

5. The PSTCA provides that a local agency or its employees may be liable for damages arising from (1) the operation of a motor vehicle; (2) the care, custody, or control of personal property; (3) the care, custody, or control of real property; (4) a dangerous condition of trees, traffic control

signs or signals, and street lighting; (5) the dangerous condition of utility service facilities; (6) the dangerous condition of streets; (7) the dangerous condition of sidewalks; and (8) the care, custody, or control of animals.

6. Plaintiff does not claim that the defendant officers and the City's actions in this matter fall into any of the eight exceptions of the PSTCA.

negligence in certain classes of cases not included in the Act's eight exceptions." *Id.* at 858. *Borenstein* concluded that "there is no reason to believe that the waiver enacted in 1971 is not applicable today." *Id.* at 859.

*Middleton* followed the lead of *Borenstein* and held that the City of Philadelphia acted well within its powers derived from its Home Rule Charter in deciding that it would be in the best interests of its citizens to waive governmental immunity in cases where bodily injury or death has resulted from the negligent or unlawful conduct of its police officers. *Id.* 492 A.2d at 765.

The *Middleton* court rejected the argument that the City ordinance was invalid because the entire area of tort immunity had been preempted by the PSTCA. The court found this argument unpersuasive in view of § 8563(a) of the PSTCA which specifically provides that "a local agency may promulgate rules and regulations not inconsistent with this subchapter in order to implement the intent of this subchapter." *Id.* at 765.[7]

Recently, the Third Circuit in *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991), addressed this question of whether § 21–701 waiving immunity was repealed by the PSTCA. The court citing *Borenstein*, *supra* at 858, stated that the state statutory limitations on municipal legislative powers "have been consistently interpreted by the Pennsylvania courts to place very few restrictions on the legislative authority of 'first class cities' such as Philadelphia." The court concluded that the PSTCA does not serve to nullify the City's ordinance waiving liability arising from the negligence of its police officers. *Id.* at 1088.[8]

Defendants cite the case of *McHugh v. Litvin, Blumberg, Matusow & Young*, 525 Pa. 1, 9, 574 A.2d 1040, 1044 (1990), in support of its Motion for Partial Summary Judgment. Defendants argue that *McHugh* stands for the premise that the Philadelphia 1971 ordinance waiving liability merely prohibited the City from pleading governmental immunity as a defense. The ordinance did not and could not create a cause of action. "When courts overrule prior impediments to bringing suits they are not creating new causes of action, but are merely opening the courthouse door which had been formerly closed to such actions." *Id.* 574 A.2d at 1040.

Defendants also cite *Thomas v. City of Philadelphia*, 133 Pa.Cmwlth. 121, 127–128, 574 A.2d 1205, 1208, *allocatur denied*, 527 Pa. 659, 593 A.2d 429 (1990), and argues that this case determined that lifting governmental immunity does not create a cause of action that does not already exist.

These arguments and the cases the defendants cite in support thereof, however, are unpersuasive in light of the several state and federal decisions discussed above which all directly address the issue of § 21–701 of the Philadelphia Code and its effect upon the 1978 PSTCA. All of these cases held that § 21–701 was not superseded by the Tort Claims Act and that the City, at the time of these decisions, could not plead immunity as a defense in a case involving negligent or unlawful acts of its police officers. *See Simmons v. City of Philadelphia, supra; Borenstein v. City of Philadelphia, supra; City of Philadelphia v. Middleton, supra; Gray v. City of Philadelphia, supra.*

In addition, not one of these cases discusses or makes an issue of the defendants' argument that § 21–701 did or did not create a cause of action. In each one of these cases,

---

7. In *Gray v. City of Philadelphia*, 133 Pa.Cmwlth. 396, 576 A.2d 411 (1990), *app. granted; Philadelphia Police Department v. Gray*, 526 Pa. 654, 586 A.2d 923 (1991), the Commonwealth Court rejected an argument by the City that the ordinance was repealed by the court by implication in *In re Upset Sale of Properties*, 522 Pa. 230, 560 A.2d 1388 (1989), and held that *Middleton* was controlling in that the City of Philadelphia waived governmental immunity when it enacted Code Chapter 21–701 and that the PSTCA did not take precedence over the City's ordinance. The *Gray* court also held that under *Middleton*, in

addition to waiving immunity under § 21–701, the limitations upon plaintiff's seeking damages from the City was also waived.

8. It must be noted that *Simmons* was argued before the Third Circuit Court of Appeals on September 27, 1990, and that Ordinance 1057 which repealed Chapter 21–701 by the Philadelphia City Council, effective December 4, 1990, was not an issue in this case. The issue of the retroactivity of Ordinance 1057 will be discussed, *infra*.

the plaintiff brought at least one negligence claim against the City asserting that § 21–701 was applicable, and in each case the court upheld the validity of the city ordinance, prevented the City from pleading immunity and allowed the negligence claim to proceed against the City. Whether or not the ordinance "created a cause of action" was simply not an issue in any of these decisions, and thus should not be an issue in this decision.

In addition, the law cited by the defendants in support of their arguments does not involve the issue of governmental immunity or Chapter 21–701 of the Philadelphia Code. *McHugh v. Litvin, Blumberg, et al., supra,* dealt with the continuing right of a husband to maintain a cause of action for loss of consortium and extending that right to the wife through the passage of the Equal Rights Amendment to the Commonwealth's Constitution applied retroactively to the wife's claim which was pending on the date of the decision. *McHugh* was a legal malpractice action involving the issue of the retroactive effect of a judicial holding. The court held that retroactive application is a matter of judicial discretion which is usually exercised on a case-by-case basis. *Id.* 574 A.2d at 1043. Section 21–701 of the Philadelphia Code was not an issue in this case nor its effect upon governmental immunity.

The defendants also cited *Thomas v. City of Philadelphia, supra,* for the proposition that a cause of action is not created by a waiver. However, my reading of that case does not come to that conclusion. In that case, the plaintiff filed a complaint against the City of Philadelphia claiming it negligently failed, through its police officers, to intervene in her imprisonment by the infamous Gary Heidnick. The court granted a demurrer, but not on the basis of § 21–701 or governmental immunity, but rather that the plaintiff in this case was not under police control when she suffered the atrocities by Heidnick, and thus the police had no duty to prevent the crimes committed against her. The court distinguished this case from *Middleton, supra,* where the plaintiff was in police custody when she suffered her injuries. Therefore, the court concluded that no duty existed at common law, and § 21–701 was not an issue in the granting of the demurrer.

As noted above, under Fed.R.Civ.P. 56(c), the moving party for a motion for summary judgment has the burden of showing that there is no genuine issue as to any material facts, with all doubts being resolved against the moving party. *See Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 784 (3d Cir.1978); *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

In this case, with respect to the defendants' first argument in support of its motion for partial summary judgment that the 1978 PSTCA superseded § 21–701 of the Philadelphia Code and thus gave the City of Philadelphia immunity for the negligence action claimed in this case, the defendants have failed to meet their burden under Fed. R.Civ.P. 56(c). The case law clearly supports the plaintiff's position that the PSTCA did not supersede § 21–701 of the Philadelphia Code and accordingly, the defendants' motion must be denied with regards to this argument.[9]

## B. THE RETROACTIVITY OF ORDINANCE 1057

The defendants' second and last argument in support of their motion is that § 21–700 of the Philadelphia Code was repealed by the City Council of Philadelphia on December 4, 1990, and made retroactive, and since plaintiff's complaint was filed on January 22, 1991, the plaintiff no longer has a cause of action for negligence against the City because the City can now plead immunity.

On December 4, 1990, the Philadelphia City Council passed Bill No. 1057, an ordinance repealing § 21–700 of the Philadelphia Code. City Council further ordained that "this ordinance shall take effect immediately and its repeal of Chapter 21–700 applies to all pending civil actions and to all civil actions

---

9. In addition, if the PSTCA did supersede § 21–700 of the Philadelphia Code, the City Council of Philadelphia would have had no need to repeal § 21–700 in December 1990.

commenced on or after the effective date of this ordinance."

■ Plaintiff argues that his cause of action against the City of Philadelphia and the police officers accrued and was vested on the day he was shot by the defendant police officers on August 28, 1989, and not when his complaint was filed on January 22, 1991. He further states that the laws in effect at that point in time are the laws that govern what legal determinations will be made on that cause of action.

It is asserted that the Pennsylvania Supreme Court decision, *Gibson v. Commonwealth of Pennsylvania, et al.*, 490 Pa. 156, 415 A.2d 80 (1980), is controlling. Plaintiff contends that the retroactive implementation of Ordinance 1057 to an already accrued cause of action is unconstitutional under Article I, Section II of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. For the reasons which follow, I agree that *Gibson* is the current controlling law in Pennsylvania and that Ordinance 1057 cannot be applied retroactively to the plaintiff's case.

*Gibson* addressed the issue of whether it was constitutional to apply Act 152, promulgated by the Pennsylvania legislature in 1978 creating for the first time in Pennsylvania statutory sovereign immunity to cases which became actionable prior to the Act. In *Gibson*, plaintiff's injuries occurred on June 20, 1977, as a result of the Commonwealth's negligence. Plaintiff instituted suit after *Mayle v. Pennsylvania Department of Highways, supra*, which abolished sovereign immunity.

*Gibson* held that a tort cause of action generally accrues on the date of the accident or injury. *See Smith v. Fenner*, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960); *Rebel v. Standard Sanitary Mfg. Co.*, 340 Pa. 313, 16 A.2d 534 (1940), and that it is well-settled that the legislature may not extinguish a right of action which has already accrued to a claimant. *Id.* 415 A.2d at 83. Thus, *Gibson* determined that the legislative act creating governmental immunity may not constitutionally govern such actions and that elimination of plaintiff's right of action that has already accrued and become vested would violate Article I, Section II of the Pennsylvania Constitution,[10] and the Fourteenth Amendment of the United States Constitution. *Id.* at 83. The court stated that fully applying the *Mayle* decision, "we conclude that the appellant's claims accrued before the promulgation of Act 152, and, therefore, may not be extinguished by the Act." *Gibson* added that though the date of a complaint's institution is relevant to the tolling of the statute of limitations, it has no place in the determination of appellant's substantive rights. *Id.* at 85.[11]

In the instant case, under *Gibson*, plaintiff's cause of action accrued and vested on the date he was injured on August 28, 1989. At that time, Chapter 21–701 of the Philadelphia Code was the applicable law whereby the City waived immunity in police matters. Also, under *Gibson*, it is not relevant when the plaintiff filed his complaint which, in this case, was done after Ordinance 1057 was passed repealing § 21–700 and declared retroactive as of December 4, 1990. The relevant issue is when plaintiff's action accrued

---

10. Article I, Section II of the Pennsylvania Constitution states:

"All courts shall be open; and every man for an injury done him in his hands, goods, person, or reputation shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

11. Defendants also argue in their motion that since § 21–701 never "created a cause of action", plaintiff's negligence action could not have accrued and vested to be applicable to the *Gibson* decision. However, the case law offered by

the defendants and discussed above does not support this argument. Not one of the cases that has discussed § 21–701 and governmental immunity either addressed or holds that any of the plaintiffs bringing an action under § 21–701 didn't have an accrued and vested right. The City of Philadelphia has presented this argument in a recent case, *Williams v. Septa and the City of Philadelphia*, (131 E.D. Appeal Docket, Supreme Court, 1992), which was heard by the Pennsylvania Supreme Court on April 6, 1992. At present, the Court has not rendered its decision. Thus, *Gibson* is the current law and applies to the instant case since the plaintiff had a vested right at the time he sustained his injuries.

and vested and in this case it vested prior to the repeal of § 21–701. Accordingly, under *Gibson*, the legislature cannot extinguish a cause of action that has already accrued, and Ordinance 1057 cannot be applied retroactively to the plaintiff's negligence cause of action.[12] He may proceed with his negligence claim against the City.[13]

Again, citing Fed.R.Civ.P. 56(c), the moving party for summary judgment has the burden of showing that there is no genuine issue as to any material facts, with all doubts being resolved against the moving party. *See Drexel v. Union Prescription, Inc., supra.* In this case, the defendants have not met their burden as to either of their arguments in support of their summary judgment motion since "genuine issues" as to material facts exist with all doubts in this case being resolved against the defendants as the moving party. For all the foregoing reasons, the defendants' Motion for Partial Summary Judgment must be denied. An appropriate order has already been issued.

**12.** Presently on appeal before the Pennsylvania Supreme Court is *Gray v. City of Philadelphia, supra* (see footnote 7), which was heard in conjunction with *Williams v. SEPTA and City of Philadelphia, supra* (see footnote 11). This matter was recently argued before the court. One of the issues on appeal that the court must address is the constitutionality of retroactively applying Ordinance 1057. Since a decision on this issue is still pending, *Gibson* is the controlling law in Pennsylvania.

**13.** Plaintiff also submits a recent Pennsylvania Commonwealth Court case, *Garvey v. Rosanelli, et al.*, 144 Pa.Cmwlth. 588, 601 A.2d 1334 (1992), which supports the *Gibson* holding and further supports his position that Ordinance 1057 cannot be applied retroactively to his negligence cause of action since it would be unconstitutional to apply retroactively a sovereign immunity statute to a cause of action which accrued before the enactment of the statute.
*Garvey* involved a suit for damages concerning alleged defects in the construction of a house. The Court of Common Pleas of Bucks County granted Lower Southhampton Township's Motion for Judgment on the Pleadings based on governmental immunity. The Commonwealth Court reversed. Plaintiff's claim against the township was that it breached its duty to insure that newly constructed houses met the applicable building codes. The township filed a motion for judgment on the pleadings claiming for one that the action was barred by governmental immunity under 42 Pa.C.S.A. § 8541 (the PSTCA). Plaintiff argued that their action was not barred by the governmental immunity statute because the acts complained of were committed at a time when there was no governmental immunity. The plaintiff asserted that governmental immunity was declared ended in 1973 under the *Ayala v. Phila. Bd. of Public Education, supra*, decision and there was no governmental immunity until the PSTCA was enacted effective January 25, 1979, therefore, a governmental immunity "gap" existed from the *Ayala* decision on May 23, 1973 until January 25, 1979.
The plaintiff pleaded that the township issued a building permit for the residence on June 4, 1973. This date is after *Ayala*, however, the trial court focused on the date the plaintiff bought the house in March 1979 after the PSTCA was enacted, and held that the plaintiff had no cause of action before March 1979, and the township was immune from liability.
The Commonwealth Court reversed and held that *Gibson v. Commonwealth of Pennsylvania, et al.*, was the controlling case and that under *Gibson* it would be unconstitutional to apply retroactively the sovereign immunity statute to a cause of action which accrued before the statute's enactment. The court reasoned that the plaintiff could not have filed suit until they had acquired the property, and the cause of action had vested in their predecessors in title during the gap, and the plaintiff acquired the cause of action when they purchased the property. The court concluded that it saw no valid distinction between *Gibson* and this case. *Id.* 601 A.2d at 1337.
It is interesting to note that *Garvey* was argued the same day—December 4, 1990, that City Council proclaimed that Ordinance 1057 became retroactive. It is also interesting that City Council enacted Ordinance 1057 only six months after the *Gray v. City of Philadelphia, supra*, opinion which upheld its prior holding in *Middleton* that the City acted within its Home Rule Charter power in enacting § 21–700 of the Philadelphia Code and effectively waived its immunity with regards to negligent and unlawful acts of its police officers.